302 So.2d 697 (1974)
Robert N. DABOV et ux., Plaintiffs-Appellees,
v.
ALLSTATE INSURANCE COMPANY et al., Defendants-Appellants.
No. 4699.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1974.
Rehearings Denied November 20, 1974.
Writs Refused January 10, 1975.
*699 James D. Davis, Gold, Hall, Hammill & Little, Alexandria, for defendants-appellants.
S. Chris Smith, III, Leesville, for plaintiffs-appellees.
William C. Pegues, III, Dist. Atty., DeRidder, for defendant-appellee-appellant.
Before HOOD, CULPEPPER, DOMENGEAUX, JJ.
HOOD, Judge.
Mr. and Mrs. Robert N. Dabov sue for damages sustained by them as the result of personal injuries suffered by Mrs. Dabov when a motor vehicle in which she was riding as a passenger ran off a bridge and overturned. The defendants are Mr. and Mrs. Gilbert Gates, their liability insurer, Allstate Insurance Company, and the Beauregard Parish Police Jury. Mr. and Mrs. Gates and Allstate filed a third party demand against Beauregard Parish Police Jury, seeking indemnification or contribution in the event the former should be held to be liable to the original plaintiffs.
Judgment on the merits was rendered by the trial court in favor of plaintiffs and against all of the defendants, in solido. Judgment also was rendered in favor of third party plaintiffs, Mr. and Mrs. Gates and Allstate, and against Beauregard Parish Police Jury, condemning the latter to pay to the third party plaintiffs one-half of any amount paid by them to the original plaintiffs. All of the defendants appealed. Plaintiffs answered the appeal, demanding an increase in quantum.
The questions presented are: (1) Was Mrs. Gates, the driver of the vehicle in which the injured plaintiff was riding, negligent? (2) Was the Police Jury negligent? (3) Should the award of general damages be increased or reduced?
The accident occurred at about noon on November 14, 1971, on the Pleasant Hill Loop Road, in Beauregard Parish. The road at that point is a rural, two-lane, dirt thoroughfare, about 17 or 18 feet wide, running generally north and south. It is a parish road, and it was being maintained by the Beauregard Parish Police Jury on the above mentioned date.
Mrs. Gates was driving her community-owned station wagon north on the above mentioned road immediately before the accident occurred. Mrs. Dabov was riding as a guest passenger on the front seat of that vehicle, and Mrs. Gates' five children *700 were riding in the back seats. While the vehicle was being driven across a narrow bridge on that road, the right front wheel ran off the east edge of the bridge, causing the entire station wagon to slide off the bridge, to turn over and to land upside down on the ground several feet below the deck of the bridge. As a result of that accident, Mrs. Dabov sustained the injuries which form the basis for this suit.
The weather was clear, the road was dry and visibility was good when the accident occurred.
The bridge was about 38 feet long and from 14 to 16 feet wide. It thus was from one to four feet narrower than the surface of the roadbed. It was constructed of wood, and the planks which formed the deck or surface of the bridge were each about four inches thick and from eight to ten inches wide. These planks were laid side by side across the bridge, and they rested on stringers made of heavy timbers running the full length of the bridge. Every such plank had an overhang of about six or eight inches, that is, it extended that distance beyond the outside edge of each of the stringers on which it rested.
The surface of the bridge was covered with about four inches of dirt, the dirt which covered the bridge being the same kind of dirt which formed the surface of the roadbed, and it completely covered and concealed the planks which formed the deck of the bridge. The bridge was flat and since it was covered with dirt, as was the road, it was impossible for a motorist to determine by viewing the surface of the road and bridge alone that there was a bridge at that location.
A considerable amount of timber, shrubbery and grass grew in the ditches and along the shoulders of this road in that area. The evidence, including photographs of the scene, shows that the shrubbery was thick on both sides of the bridge where this accident occurred, and that it was extremely difficult for a motorist to see or detect that a bridge was located at that point.
There were no signs, posts, railings or other structures on or near the bridge which would indicate to a motorist that a bridge was at that location, or which would show the width or length of the bridge. There were no signs on the Pleasant Hill Loop Road, at any place either north or south of the bridge, indicating that there was a narrow bridge or a bridge of any kind in that area.
Mrs. Gates had traveled over that road as a passenger in an automobile on four or five occasions before this accident occurred, but this was the first time she had driven on it. She did not know that there was a bridge in that area, and she thought she was on the regular roadbed until the moment the accident occurred. As she approached the place where the bridge was located, she saw ahead of her a pickup truck being driven south on the same road, and it was apparent to her that she would have to meet and pass that truck. She thereupon reduced her speed of 15 to 20 miles per hour, to a speed of 8 to 10 miles per hour, and she caused her station wagon to travel along the extreme right, or east, side of the road in order to allow room for her vehicle to safely pass the pickup truck.
The pickup truck was being driven by E. J. Simmons. Mr. Simmons brought his truck to a stop on the west side of the road, at a point about 35 feet north of the north end of the bridge. The Gates' station wagon was about the same distance south of the south end of the bridge when the Simmons' truck stopped. Mrs. Gates continued to drive her station wagon at a speed of 8 to 10 miles per hour along the extreme east edge of the road and onto the bridge, feeling that it was necessary for her to do that in order to meet and pass the truck safely on the relatively narrow road. When the front of the Gates' vehicle reached a point about five feet from the north end of the bridge, the right front wheel slipped off of the east edge of it, and thereafter the entire station wagon proceeded to slide off the bridge, to turn over *701 and to come to rest upside down on the banks of the stream which flowed under that span.
Immediately after the accident occurred, several witnesses observed that the east end of one of the planks which formed a part of the deck of the bridge had been broken off. The broken plank was located four or five feet from the north end of the bridge, and it is apparent from the position of the overturned vehicle that the right front wheel of that vehicle reached that plank at or about the time the car slid off the bridge. The east six or eight inches of the plank broke off, that being that part of that plank which overhung or extended eastward beyond the east supporting stringer.
Mr. and Mrs. Gates and Allstate contend that that plank was defective, and that it broke when the Gates' vehicle attempted to roll over it. They argue that the defective plank caused the station wagon to slide off the bridge, that the Police Jury was negligent in failing to maintain the bridge in a safe condition, and that its negligence in that respect was a proximate cause of the accident. They also contend that the Police Jury was negligent in failing to provide proper warnings of the hazards of a narrow, unmarked and obscured bridge, and that its negligence in that respect also was a proximate cause of the accident. They argue that in any event Mrs. Gates was free from negligence.
The Police Jury contends that Mrs. Gates saw or should have seen the bridge in time to avoid the accident, that she negligently drove her station wagon off the east edge of it, and that her negligence in failing to see the bridge and to keep her vehicle on it was the sole proximate cause of the accident. It denies that the bridge was defective in any way. It reasons that when the right front wheel of the Gates' vehicle ran off the bridge, the undercarriage of the car struck the east end of a deck plank and caused it to break. The Police Jury also contends that the bridge was visible to a prudent and reasonably observant driver, and that the Police Jury thus was not negligent in failing to maintain the bridge in a safe condition or in failing to erect signs, markers or railings on the bridge to warn motorists of the danger.
The trial judge concluded that "Mrs. Gates literally drove the car off of the side of the bridge to her right," that she was negligent in having failed to see what she should have seen, and that her negligence was a proximate cause of the accident. He also concluded that the Police Jury was negligent in maintaining a bridge which was too narrow for safety, and in failing to erect guard rails and signs at the bridge warning motorists of the danger. He held that the negligence of the Police Jury in those respects also was a proximate cause of the accident.
We think the evidence supports the finding of the trial judge that Mrs. Gates drove her station wagon off the east edge of the bridge, and that the accident was not attributable to a defective plank on that structure. The evidence also supports his finding that the Police Jury was negligent in maintaining a dangerously narrow and obscured bridge, and in failing to erect and maintain warning signs or guard rails warning motorists of the danger. We believe the trial judge erred, however, in finding that Mrs. Gates was negligent in having failed to observe that there was a narrow bridge at that point, and in allowing her vehicle to run off the edge of that bridge.
The evidence convinces us that the heavy growth of trees and shrubbery on both sides of the bridge, combined with the fact that the bridge was entirely covered with dirt, making the surface of the bridge indistinguishable from the surface of the roadbed, prevented a reasonably careful and observing motorist from seeing that there was a narrow bridge at that location.
*702 Mr. Simmons, the driver of the pickup truck which was meeting the Gates vehicle, was 85 years of age. He had lived in that area all of his life and he was thoroughly familiar with the road and the bridge where the accident occurred. He testified that he was watching Mrs. Gates as she started to cross the bridge, and that he was afraid that she was going to run off the edge of the bridge since she was traveling "very close" to the east edge of the road. He stated that Mrs. Gates was driving "about as slow as a car will go," that the bridge "looked like the road," that it was "kind of hard to see," and that "it was probably hard for her to see, that being her first time and it was covered with sand."
Mrs. Gates explained that she didn't know there was a bridge there until her car suddenly overturned, that "it was growed up just like the road along side," that the bridge "just looked like part of the road because it was covered over with dirt," and that she "just gradually moved toward the right to give him part of the road." Her recollection is that Simmons did not bring his truck to a stop until a moment before her vehicle slid off the bridge.
The Police Jury is not responsible for every accident which may occur on a parish road, nor is it a guarantor of the safety of travelers thereon or an insurer against all injury which may result from obstructions on or defects in such a road. The duty of the Police Jury is only to see that parish roads are reasonably safe for persons exercising ordinary care and reasonable prudence. The Police Jury, however, is liable for damages caused by defects in a parish road which are in the nature of "traps," and are sufficiently dangerous to cause an accident and an injury to a motorist using the highway in a reasonably prudent manner, if the Police Jury has had actual or constructive notice of the defect. Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3 Cir. 1963).
The driver of a motor vehicle is under a never ceasing duty to maintain a proper lookout and to see that which he should have seen. His failure to see that which he should have seen constitutes negligence. He is required to maintain such control over the speed and operation of his vehicle as to permit him to stop within the range of his legally proper lookout. There are exceptions to this rule, but those exceptions apply only in situations where the accident occurs suddenly and without warning, or where it results from a dangerous condition which could not have been detected by a driver who was maintaining a proper lookout and proper control over his vehicle. DeGregory v. State Department of Highways, 192 So.2d 834 (La.App. 1 Cir. 1966).
Under LSA-R.S. 32:235(B) the Police Jury has the responsibility of maintaining traffic signs and controls within its jurisdiction, including signs to warn motorists of hazardous conditions. Its failure to do so constitutes negligent conduct. Hall v. State Department of Highways, 213 So.2d 169 (La.App. 3 Cir. 1968); Falgout v. Falgout, 251 So.2d 424 (La.App. 1 Cir. 1971).
In Watts v. City of Baton Rouge, 248 So.2d 42 (La.App. 1 Cir. 1971), the court said:
". . . the governing authority which has jurisdiction over the highway, road, street or thoroughfare, has the legal duty to erect warning signs or barricades sufficient to warn motorists of any unusual obstruction, perilous condition or defect in the road face that would entail danger to the physical safety of those proceeding along such routes."
We think the bridge involved in the instant suit was unusually hazardous, or trap-like, even to a reasonably careful and observant motorist. The bridge was from one to four feet narrower than was the roadbed. There were no shoulders on either side of the bridge as there were on the sides of the road, but instead there was a *703 sudden drop from the edges of the bridge. The surface of the bridge was covered with dirt, as was the surface of the road, misleading a motorist into thinking that the roadbed continued over the place where the bridge was located. Trees and thick shrubbery prevented an approaching motorist from seeing the sides of the bridge or the stream spanned by it. There were no railings, markers or signs in that area indicating that a bridge was there or showing the location of the outside edges of the bridge.
Pursuant to the provisions of LSA-R.S. 32:235, the Department of Highways adopted a "Manual of Traffic Control Devices," a copy of which was sent to the Beauregard Parish Police Jury before the accident occurred. That manual requires the installation of a "Narrow Bridge" sign on the approach to a bridge having a roadway width of 16 to 18 feet, or a "One Way Bridge" sign on the approach to a bridge less than 16 feet wide. These requirements were binding on the defendant Police Jury, and we have already noted that no such signs were erected by it. The evidence shows that the bridge involved here was not over 16 feet wide, and that there was not room on it for two motor vehicles to pass.
The secretary-treasurer of the Police Jury acknowledged that the above mentioned manual had been received by the Police Jury several years before this accident occurred. She testified, however, that when a sign was needed the road foreman or one of the police jurors would inform her, and she would order the sign. The road foreman would then have a crew put it up. She apparently was never informed that a sign was needed for the above mentioned bridge. The road foreman employed by the Police Jury at the time of the accident, and for some time prior thereto, testified that he was thoroughly familiar with this particular bridge, that he knew that it was only 16 feet wide, and that there were no railings or signs warning of the danger, that he had never been informed of the above mentioned manual, and that he never requested any signs or railings for the bridge. We find that the Police Jury had actual notice of the dangerous condition at that point on the Pleasant Hill Loop Road, and that it neither removed the danger nor warned motorists of it.
Under all of these circumstances, we affirm the holding of the trial judge that the Police Jury was negligent in maintaining a dangerous traffic hazard on a parish road, and in failing to adequately warn motorists of that danger. Its negligence in that respect was a proximate cause of the accident. See LeBlanc v. Estate of Blanchard, 266 So.2d 918 (La.App. 4 Cir. 1972); Falgout v. Falgout, supra; LeBlanc v. Parish of East Baton Rouge, 271 So.2d 634 (La.App. 1 Cir. 1973).
Mrs. Gates was driving her vehicle at a very slow rate of speed when the accident occurred. She was not negligent in driving along the extreme east edge of the road, since it was necessary for her to do so in order to pass the Simmons' truck which was just 40 feet ahead of her when her car ran off the bridge. LSA-R.S. 32:72. We have found that the bridge was obscured from her view as she approached it, so she was not negligent in having failed to see it before she started to cross it. We have considered the fact that it may have been possible for her to have detected that she was on a bridge just before the accident occurred by looking to the side and down while she was crossing it. She was getting her car in a position to pass the Simmons' truck on a narrow road, however, and her attention was directed principally to seeing that that maneuver could be completed safely. We find no negligence on her part in failing to look to the side to determine whether she was on a bridge, especially since there had been nothing to cause her to suspect any such danger.
After considering all of the evidence, we find that Mrs. Gates was operating her vehicle *704 in a careful and prudent manner when the accident occurred. We hold that she was free from negligence, and that the trial judge erred in finding that Mr. and Mrs. Gates and their insurer were liable, in solido, with the Police Jury, for damages.
Our conclusion is that the plaintiffs are entitled to recover only from the Police Jury for the damages they sustained.
As a result of the accident, Mrs. Dabov sustained bruises to various parts of her body and a shoulder injury which was diagnosed as a "marked right acromioclavicular separation present with apparent overriding of the clavicle over the acromium process." The bruises have healed completely, but she has continued to suffer pain and residual disability in her shoulder. The medical experts agree that she has been left with a 10 to 20 percent permanent disability of her right shoulder. She also has suffered a permanent disfigurement in that her right clavicle juts upward, creating a large lump or knot on the top of her right shoulder. The lump is noticeable. We agree that it causes her embarrassment and restricts her in the kind of clothes she will be able to wear hereafter. The lump can be removed by a major surgical procedure, but a scar will remain on her shoulder, and the physicians who testified did not recommend that type of surgery.
The trial judge awarded Mrs. Dabov the sum of $10,000.00 as general damages for her injuries. We think that is within the range of the discretion which is vested in the trial court, and we will not disturb that award.
For the reasons herein assigned, the judgment appealed from is amended to decree that Gilbert Gates, Alice Gates and Allstate Insurance Company are relieved from any liability to plaintiffs. It also is amended to reject the third party demands of Mr. and Mrs. Gates and Allstate against Beauregard Parish Police Jury. The judgment appealed from is affirmed in all other respects. The costs of this appeal are assessed to the Beauregard Parish Police Jury.
Amended and affirmed.
DOMENGEAUX, J., concurs in part and dissents in part being of the opinion that there is no manifest error in the foregone findings concerning the negligence of Mrs. Gates. I would affirm the trial court judgments without amendment.