361 So.2d 982 (1978)
Isaac JIMCOILY
v.
The STATE of Louisiana Through the DEPARTMENT OF HIGHWAYS et al.[*]
Nos. 8600 to 8603.
Court of Appeal of Louisiana, Fourth Circuit.
August 11, 1978.
Rehearings Denied September 12, 1978.
Writ Refused October 26, 1978.
*984 Darryl W. Bubrig, Sr., Buras, for Patricia Pugh and Jewitt Pugh, husband and wife, and Jewitt Pugh, d/b/a Lower Coast Safety Light Service.
George J. Dowd, Chalmette, for Sonja Smith.
Fernand L. Laudumiey, III, New Orleans, for Loyd G. Mangum.
Alvin J. Liska, New Orleans, for Dept. of Highways.
Robert A. Keily, New Orleans, for Isaac Jimcoily.
Richard T. Regan, Metairie, for Donald G. Lambert Contractor, Inc., and Maryland Casualty Co.
Before REDMANN, SCHOTT and BEER, JJ.
REDMANN, Judge.
We reverse judgments against the State Department of Highways which reasoned that Highways' placing of detour signs for 2,000 feet before a changeover from two-lane to four-lane highway was inadequate and caused an accident. We also reverse the judgments' dismissal of claims against the driver who failed to see and follow the signs and crashed through the detour barricade head-on into another automobile in the left oncoming lane.
Our fundamental conclusion is that the highway signing, like the use of a 180-foot-long crossover rather than a longer one for traversing the 24-foot median (of which plaintiffs also complain), was not a cause-in-fact of the accident, a factor "but for" which the accident would not have happened. See Pierre v. Allstate Ins. Co., 1970, 257 La. 471, 242 So.2d 821.
We preliminarily dispose of plaintiff Isaac Jimcoily's argument that, for failure to comply with a pre-trial order to list witnesses and describe evidence, Highways should not have been allowed to present evidence at trial. To prohibit a defendant from participating in a hearing is the same as not to afford him a hearing, which is a denial of due process impermissible as a penalty for non-compliance with pre-trial procedure; Louisiana Hoop Co. v. Hood, La.App. 1 Cir. 1974, 292 So.2d 808. See also Boudreaux v. Yancy, La.App. 1 Cir. 1971, 256 So.2d 340.
State Highway 23 in Plaquemines parish was being converted from an undivided two-lane highway into a divided four-lane highway with a 24-foot median by the addition of a second two-lane roadway 24 feet from and parallel to the old highway. The accident occurred near a point where north-bound traffic on the old, two-lane highway was being diverted across the median through a 180-foot-long, paved crossover onto the new two-lane roadway. To the north of that crossover the old two-lane roadway served south-bound traffic exclusively *985 and the new two-lane roadway served north-bound traffic exclusively.
North-bound driver James Smith made no attempt at the necessary turn through the 180-foot crossover, but instead drove into the barricade which blocked the right lane of the old roadway, veered into the left lane of the old roadway and, continuing to travel for 175 feet, crashed into an oncoming car head-on with so much force that engine and front passenger compartments of both cars (a Buick Electra and a Ford Fairlane) were virtually demolished.
James Smith's brother Carley was killed. James Smith, his passenger Loyd Mangum and Isaac Jimcoily, the driver of the south-bound car, were seriously injured.
Carley Smith's widow and the three injured persons sued Highways and its contractor, alleging that the accident was caused by inadequate signing. James Smith was named a codefendant by the other plaintiffs. The trial judge reasoned that the signing was inadequate and rendered judgment against Highways alone in favor of all plaintiffs. Highways, Jimcoily and both Smiths appealed. Mangum answered Highways' appeal.
The signs facing north-bound traffic as it approached the change from two to four lanes included:
(1) At about 2,500 feet before the change, "Speed Limit 45 mph" and "Do Not Pass";
(2) At 2,000 feet, "Detour Ahead" and "Speed Limit 45 mph";
(3) At 1,500 feet, "Detour 1500 Ft.";
(4) At 1,000 feet, "Detour 1000 Ft." (and "Two Way Traffic");
(5) At 500 feet, "Detour 500 Ft." and "Keep Right" with right arrow;
(6) At 200 feet, "Keep Right" with right arrow (a sign larger than the last); and
(7) At the far side of the crossover, a barricade (across the right lane of the old roadway) with three black and white striped, reflector-dotted horizontal boards upon which were mounted a large right arrow and two flashing "high-intensity" lamps.
The trial judge took judicial cognizance "that there were some 40 accidents at that scene." However, plaintiff Jimcoily's exhibit listing accidents in the vicinity includes those happening up to nine miles away and only lists 24 or 25. That exhibit only listed one accident at the same highway milepost at the time of this accident (the same day; conceivably this accident itself) and only two others at any time (they were six and ten weeks later). A deputy sheriff testified that there had been five or six but gave no details (other than "some [drivers] were intoxicated, some were not"). Evidently the 40 accidents the trial judge knew of were not readily discoverable by Jimcoily. To take judicial cognizance of matters that are not readily discoverable by the litigants puts them at the great disadvantage of not being able to explain or even argue the implications of those matters. Moreover, a reviewing court is not able to take judicial cognizance of those other accidents because it has no means to ascertain their existence or, more important, their circumstances from which alone inferences can be drawn as to their causes-in-fact. The simple fact that accidents have occurred is not probative of their causes; Petree v. Crowe, La.App. 2 Cir. 1973, 272 So.2d 399, writ refused La., 274 So.2d 709. The record thus will not support any inference from prior accidents that Highways by its unspecified fault created some unspecifiable trap which caused those accidents and this one as well. Nor does this evidence justify a conclusion that the highway signing or a too-short crossover was a cause-in-fact of this accident.
The trial judge also cited the testimony of one nearby resident that reflectors on the barricade "didn't shine too good" and "you can't see [the high-intensity flashing lights] too good" on rainy nights like the night of this accident. The judge concluded that the signing was inadequate to warn motorists.
We disagree. Diminished visibility of a barricade on rainy nights does not make the overall control system misleading *986 or a trap to motorists. No reasonably cautious motorist, especially after seeing the first detour sign (as James Smith did) and after having passed through this very detour twice daily to and from work during the previous 17 days (as James Smith did) would have failed to see all three other "Detour" signs 500 to 1,500 feet before the barricade. No reasonably cautious motorist could have come to 500 feet from the barricade without knowing that he would have to leave his lane of travel. That the signs did not, until the barricade itself, indicate the direction of the detour's turn (one of plaintiffs' complaints) is immaterial: the reasonable driver would know that some turn must be made, and would not be misled by the signs or the absence of directional arrow signs into believing that he would not have to turn. He would not be trapped into believing that he should proceed full speed, straight ahead into the barricade. At a minimum, the reasonable driver would have reacted to the detour warning signs by being on the lookout for the detour, and if less able to stop in the distance at which he saw the barricade because of the rain, he would at least be able to slow enough to make the crossover turn easily.
Nor was the absence of a sign reducing speed to 20 mph an accident-causing fault. Smith testified that the only one of the signs he saw was the one reading "Detour Ahead" 2,000 feet before the barricade; he saw no other signs. There is no reason to suppose that a driver who had passed up four detour signs without paying them any heed would have reacted to a 20 mph sign. To the reasonable man, "detour" might be more suggestive of need for caution than "20 mph", because a detour might entail a sharp turn-off onto a temporary roadway of markedly inferior surface. Furthermore, the accident was not the result of James Smith's going 45 mph (if that slow) rather than 20 mph. He went through the barricade because he did not turn into the crossover and made no attempt to make that turn. If there had been a 20 mph sign and if he had slowed to 20 mph he still would have gone through the barricade, unless he would also have turned. No evidence suggests he would have.
We similarly conclude that the 180-foot length of the crossover was not a cause-in-fact of the accident. James Smith had an admitted 2,000-foot warning of the approaching detour (with added warnings of each 500 feet nearer the detour) and he did nothing. He made no effort to turn for the 180-foot crossover; it was not too short for him to make the turn: he did not try to make the turn. There is no evidence to support an inference that he would have turned for a 1,000-foot crossover.
For lack of any evidence from which it could be correctly inferred that inadequate signing (or inadequate crossover) was a cause-in-fact of this accident, the judgments against Highways must be reversed (and plaintiffs' argument that the contractor was also responsible for the signing need not be considered).
There is more than ample evidence, already alluded to, to support the conclusion that driver James Smith was at fault. We base our conclusion, however, primarily on the presumption that a driver who runs into another in the other's traffic lane is at fault, and to escape liability must exculpate himself, Rizley v. Cutrer, 1957, 232 La. 655, 95 So.2d 139. James Smith did not overcome that presumption. The judgments dismissing the claims of Jimcoily and Mrs. Carley Smith against James Smith must be reversed. (Mangum did not appeal.)
Jimcoily's complaint that the judgment did not give him $3,984 advanced to him by the Louisiana Health and Human Resources Administration (and by it recovered through intervention, R.S. 46:446) is without merit. Unlike medical expenses recovered by Charity Hospital by its intervention, HHRA's advances of money to a disabled tort victim are not damages caused by the tort. They are no more recoverable than loans by a bank to the tort victim. The victim is made economically whole by the award for lost earnings; to give him both earnings and the money borrowed to *987 replace the missing earnings would allow double recovery.
On quantum, Mrs. Carley Smith complains of the omission of the $211,192.14 judgment in her favor to include an amount for loss of love and affection. However, that award apparently included the full amount her deceased husband would have earned, rather than just the loss of support. This substantial error in her favor approximately compensates for the error of failing to award general damages for loss of love and affection.
Despite other complaints, we view quantum as within the "much discretion" of C.C. 1934(3); Coco v. Winston Ind., Inc., La.1977, 341 So.2d 332.
Expert witness fees were apparently omitted from the judgments by oversight. We therefore fix and award those fees (without increment for private plane travel by one doctor from Houma).
The judgments appealed from are reversed insofar as they cast the Department of Highways and absolved James Smith, and there is judgment dismissing all demands against Highways at plaintiffs' costs, and the judgments in favor of Isaac Jimcoily and Sonja Smith are amended to make James Smith the party cast, at his cost, including expert fees of $200 for Dr. Gary and Dr. Wolfson and $100 for Messrs. Hyde, Merritt and Andre.
NOTES
[*] (Consolidated with Loyd G. Mangum v. State, etc. James W. Smith v. State, etc. Sonja Smith, widow v. State, etc.)