454 So.2d 823 (1984)
Connie Sue PONDER, Ind. & as Natural Tutrix, et als., Plaintiffs-Appellees,
v.
GROENDYKE TRANSPORT, INC., et als., Defendants-Appellants.
No. 83-503.
Court of Appeal of Louisiana, Third Circuit.
June 12, 1984.
Concurring Opinion June 13, 1984.
Writs Denied October 5, 1984.
*825 Gold, Little, Simon, Weems & Bruser, John F. Simon, Alexandria, for defendant-appellant.
Morrow & Morrow, Patrick C. Morrow, Opelousas, Ronald R. Thompson, Baton Rouge, Bernard Whetstone, Little Rock, Ark., for defendant-appellee.
Paul Wilkins, Columbia, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
DOUCET, Judge.
In this tragic vehicular collision case, a northbound 18-wheel truck failed to stay in its lane of traffic, at a point where the highway expanded from a two-lane undivided roadway into a four-lane divided highway, striking a southbound vehicle, killing two and seriously injuring another. In consolidated actions which ensued, a jury awarded plaintiffs damages approaching four million dollars against defendant trucking company and its insurers. In accordance with law, the trial judge adjudicated the claims against the State of Louisiana, Department of Transportation and Development (DOTD), and found this defendant free of fault. Issues presented on appeal are: (1) the finding of no liability on the part of DOTD; (2) whether the award was excessive; and (3) whether the trial court erred in permitting the jury to know the policy limits of all insurance carriers. We amend and affirm.
*826 On March 30, 1982, at approximately 1:30 A.M., Stuart A. Thevenot was driving an 18-wheel vehicle belonging to Groendyke Transport, Inc., north of Cheneyville, Louisiana heading north toward Lecompte, Louisiana on Highway 71. South of Lecompte the highway changes from a two-lane undivided road to a four-lane divided highway. The southbound traffic continued in a straight line upon reaching the two lane section, whereas the northbound lane forked-off in a trapezoid fashion towards the two northbound lanes. The truck traveled some 600 feet through a painted gore equipped with raised markers, struck and ran through a number of barrels standing well inside the perimeter of the neutral zone between the divided highway. The truck rolled through the barrels for approximately 200 feet then jackknifed from the neutral zone into the southbound portion of the divided Highway 71. There, the Thevenot truck, without warning, smashed into a vehicle being driven by Nickie D. Ponder, instantly killing Nickie Ponder and his brother Donald Ponder. The other occupant in the Ponder vehicle, Michael Molsbee, suffered numerous injuries; Molsbee's left arm and shoulder were severely and permanently mangled. The Ponder vehicle was in its right-hand lane traveling at a reasonable speed. On the other hand, it is clear the Thevenot vehicle was in the wrong lane albeit at an undetermined speed.
Connie Sue Ponder, individually and on behalf of her minor son, brought suit to recover damages occasioned by Donald Ponder's death, naming as defendants Stuart A. Thevenot, Groendyke Transport, Inc., North Star Reinsurance Corp., and Mission Insurance Co. Linda Ponder brought suit against the same defendants, to recover damages individually and on behalf of her three children as a result of the death of Nickie Ponder. Michael Molsbee also brought suit against all of the aforementioned defendants except Mission Insurance Co. Stuart Thevenot brought suit against DOTD and the aforesaid defendants brought third party demands against DOTD.
Original defendants and third party plaintiffs, Groendyke Transport, Inc., North Star Reinsurance Corporation and Mission Insurance Company together with original plaintiff Stuart A. Thevenot presented their claims against the State of Louisiana, DOTD. The demands against the State were determined by the trial judge whereas plaintiff's claims against the original defendants and third-party plaintiffs were tried by a jury. All claims were consolidated for trial.
The jury determined that Stuart A. Thevenot was 80% at fault, thereby implying that another party, presumably DOTD, was 20% at fault. The trial judge found there was no evidence to support a finding of any fault on the part of DOTD, stating: "[t]he highway was properly designed at the accident site. Also, the brightly marked metal barrels with sand in the bottom for ballast were placed well within the neutral ground by the DOTD and created no hazard whatsoever for an ordinarily prudent driver. After Mr. Thevenot ignored the clearly visible early warning signs, Mr. Thevenot's truck had to progress in a straight line through the no travel zone of the painted point (gore) at least 600 feet over raised markers before he ever got to the neutral ground which was outlined by reflector marked barrels placed well back within the perimeter but outlining the perimeter of the neutral ground. Then the Thevenot truck ran through the barrels for about 200 feet before it swerved in the southbound lanes of the four-lane highway. Third party plaintiffs contend that a brake air hose was severed in the accident. Perhaps so, but how and when? It could have been by one of the barrels overrun in the neutral ground or by the accident impact itself in the southbound lane of U.S. Highway 71.
Even if one of the barrels had become lodged underneath the truck and severed an air hose to the brakes, the cause of the accident remains the fault of the driver, Thevenot, who without any known reason traveled some 600 feet across a no travel zone and then into the neutral zone where the barrels were standing as markers to *827 outline the said neutral zone. Mr. Thevenot left his travel lane portion of the highway; this was an act on his part which falls below the reasonable standard of care demanded of any motorist...
... The highway area near the accident site was neither hazardous nor defective. Third party plaintiffs, Groendyke Transport, Inc., North Star Reinsurance, and Mission Insurance Company, and original plaintiff, Stuart A. Thevenot, have failed to prove by a preponderance of the evidence (1) that the highway design was defective, or (2) that the highway construction was faulty or (3) that the highway regulations imposed were unreasonable or inadequate or (4) that the highway inspection or highway maintenance was inadequate or (5) that the highway marking or highway signing was improper or inadequate.
On the contrary, the highway area here involved posed no surprises. There was an adequate early advance warning sign system, an effective positive route guidance system, a reasonably safe recovery area and the installation of the best available cross over prevention measures. In this matter the DOTD was neither negligent nor in custody of a defective or hazardous highway."
The jury awarded the following sums to the plaintiffs:

(a) Connie Sue Ponder (individually)
 1) Loss of love and affection $150,000.00
 2) Loss of support, earnings, maintenance $750,000.00
 3) Special damages (funeral, etc.) 5,032.00
 ___________
 TOTAL $905,032.00
 -----------
(b) Connie Sue Ponder, on behalf of minor
 Donald R. Ponder, Jr.
 1) Loss of love and affection $100,000.00
 2) Loss of support, earnings, maintenance 200,000.00
 ___________
 TOTAL $300,000.00
 -----------
(c) Linda Ponder (individually)
 1) Loss of love and affection $150,000.00
 2) Loss of support, earnings, maintenance 700,000.00
 3) Special damages (funeral, etc.) 2,000.00
 ___________
 TOTAL $852,000.00
 -----------
(d) Linda Ponder on behalf of the following
 minor children:
 John Wayne Ponder:
 1) Loss of love and affection $100,000.00
 2) Loss of support, earnings, maintenance 200,000.00
 ___________
 TOTAL $300,000.00
 -----------
 Christopher D. Ponder
 1) Loss of love and affection $100,000.00
 2) Loss of support, earnings, maintenance 200,000.00
 ___________
 TOTAL $300,000.00
 -----------
 Angela N. Ponder
 1) Loss of love and affection $100,000.00
 2) Loss of support, earnings, maintenance 200,000.00
 ___________
 TOTAL $300,000.00
 -----------
(e) Michael E. Molsbee
 1) Past pain and suffering $ 10,000.00
 2) Future pain and suffering 50,000.00
 3) Loss of past earnings 23,000.00
 4) Loss of future earnings 500,000.00
 5) Past medical expenses 20,000.00
 6) Future medical expenses 5,000.00
 7) Disability, disfigurement 10,000.00
 __________
 TOTAL $618,000.00
 -----------

In the Connie Ponder suit, the defendants have paid the judgment awarded Connie Sue Ponder, individually, but have appealed the judgment in favor of Donald Ponder, Jr., and have appealed the dismissal of their third party demands against DOTD. In the Linda Ponder suit, the defendants have appealed as to all plaintiffs, and have appealed the dismissal of their third party demands against DOTD. In the Michael Molsbee suit, the defendants have settled with Michael Molsbee, but have appealed the dismissal of their third party demands against the Department. Stuart Thevenot has appealed from the dismissal of his suit against the Department.
Appellants specify three assignments of errors, to wit: (1) The District Court erred in finding no liability on the part of DOTD; (2) The verdict of the jury was manifestly erroneous in awarding excessive sums to Linda Ponder, Angela N. Ponder, Christopher D. Ponder, John Wayne Ponder, and Donald Ponder, Jr.; and (3) The court erred in permitting the policy limits of all of the insurance carriers to be known by the jury.

LIABILITY
The third party plaintiffs and plaintiff Thevenot contend DOTD was negligent in that if the barrels had not been where they were, or if they had not been made of metal, Mr. Thevenot's truck could have continued forward into the neutral ground or back into the northbound lanes. In other words, appellants contend the 55 gallon metal drums severed the brake line and otherwise caused Thevenot to lose control of his truck. Appellants argue that plastic, *828 rubber or even cardboard barrels should have been used instead inasmuch as vehicles could then travel through barricades with a minimum of damage to the vehicles. We disagree.
It is undisputed that Mr. Thevenot was in the wrong lane of travel at the time of the collision, thus the burden is upon Thevenot to show that the collision was not caused by his negligence. Simon v. Ford Motor Co., 282 So.2d 126, (La. 1973); Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957). Additionally, those parties alleging strict liability on the part of DOTD had the burden of proving the existence of a defect which created an unreasonable risk of harm to others. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980). In determining whether the risk of harm is unreasonable, the utility of the object must be balanced against the risk and magnitude of harm posed. Hunt v. City Stores, Inc., 387 So.2d 585 (La. 1980).
Mr. Thevenot, a resident of nearby Cottonport, testified that he had driven through this area at least three or four times a week, often at night, for the past several years and he was familiar with the steel barrels and the roadway. The barrels are marked with high intensity reflective tape to enhance their visibility at night. They were weighted with sand to reduce the risk of them being blown or knocked over onto the traveled portion of the highway. The trial judge obviously accepted as true the testimony that the barrels were properly placed and marked in accordance with acceptable traffic control planning.
Although not dispositive of whether DOTD's maintenance or design presented an unreasonable risk of harm, the evidence indicated that more than 1,200,000 vehicles safely maneuvered through this location. Indeed, Mr. Thevenot testified he had traversed the same passage many times before.
In addition to the multiple barrels, there were raised pavement markers to alert motorists to the upcoming divided highway. Signs also warned of the change in travel design including "Keep Right" signs. Nevertheless, Mr. Thevenot claimed he was blinded by an oncoming car light after he already slowed to execute the fork in the highway. When Thevenot struck the barrels, the evidence indicated he had not yet applied his brakes and the tractor-trailer was turned slightly to the left. He traveled approximately 600 feet through the gore area before striking the barrels whereupon he lost control of the truck. It appears that a barrel became lodged beneath the truck, rupturing a brake line.
Drivers are under a never ceasing duty to maintain a proper lookout and to see what should be seen. Dabov v. Allstate Ins. Co., 302 So.2d 697 (La.App. 3rd Cir.1974); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Smith v. Borchers, 243 La. 746, 146 So.2d 793 (1962); McCandless v. Southern Bell Tel. & Tel. Co., 239 La. 983, 120 So.2d 501 (1960). Causation is a question of fact to which the trial court's determinations are entitled to great weight and will not be disturbed absent manifest error. Smith v. State, Through Dept. of Transportation and Development, 412 So.2d 685 (La.App. 2nd Cir.1982); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We agree with the trial court that Thevenot was negligent in failing to maintain a proper lookout for hazards which, by use of ordinary care and observation, he should have been able to see in time to avoid collision with the channelization devices. Furthermore, we agree with the trial judge that the warnings provided by DOTD were sufficient to alert an ordinary, reasonable motorist of the character of the crossover and the safeguards provided by DOTD were commensurate with any danger posed. Accord: Jimcoily v. State Through Dept. of Highways, 361 So.2d 982 (La.App. 4th Cir.1978) writ denied 363 So.2d 1384 (La.1978); Usry v. Louisiana Dept. of Highways, 402 So.2d 240 (La.App. 4th Cir. 1981) writs denied 404 So.2d 1259 (La.1981).

QUANTUM
Upon review of a jury's award of damages, an appellate court is constrained *829 to follow several limiting principles. First, we are reminded that assessment of damages is the province of the trier of fact, whose judgment is allowed great discretion and deference. Moreover, an award of damages cannot be disturbed unless the appellate record clearly reveals that the trier of fact abused its great discretion. If such is the case, the reviewing court may modify the award, but only to the extent of lowering it to the highest point which is reasonably within the discretion afforded the finder of fact. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Reck v. Stevens, 373 So.2d 498 (La.1979). Nevertheless, Courts of Appeal have the right and duty to review damage awards. Wilson v. Magee, 367 So.2d 314 (La.1979); La. Const. art. 5 § 10(B); Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977). The appellate court's modification of the award must be based upon a particularized inquiry as to the injuries suffered by the individual plaintiffs.
Defendants have appealed the awards made to Linda Ponder, her children, and Donald Ponder, Jr. Appellants do not seriously contest the sums awarded for loss of love and affections, rather their argument centers on the awards for loss of support, earnings, and maintenance.
Donald Ponder, Sr. went to work for Ocean Drilling and Exploration Co. (ODECO) as a roughneck in 1969 earning $3.15 per hour. A series of promotions followed and on the date of his death he was earning $3,200 per month or $38,400 per year. In addition, he received a company car and insurance benefits. On the date of his death he was 35 years old and had a worklife expectancy of 24.9 years, based upon working until age 60. Dr. Charles Bettinger, an expert in the field of economics and statistics, called on plaintiff's behalf, estimated Donald Ponder's past and future loss of earnings, including fringe benefits, to be $1,373,352.00 based on a 7½% wage increase per annum over 24 years. When fringe benefits (calculated to be 28% of gross) are excluded, Bettinger's estimate was $1,039,915.00. The jury awarded Connie Sue Ponder $750,000.00 for loss of support and her son, Donald R. Ponder, Jr. was awarded $200,000.00 for loss of support.
Nickie Ponder was also employed by ODECO, earning $9.25 per hour or $25,493.00 annually, at the time of his death. He was 33 years of age with a projected work life expectancy 25.8 years. Dr. Bettinger, using the same inflation and discount factors, projected his earnings loss at $795,604.00. The jury awarded the Nickie Ponder survivors $1,300,000.00 for loss of support and maintenance, or $700,000.00 to the surviving spouse and $200,000.00 to each of his three children.
Thus, the jury's award in the Nickie Ponder case exceeded the estimated economic loss projected by plaintiffs' expert and apparently failed to take into account any discount factor to arrive at the present value. Furthermore, the award appears to assume the decedent would spend all (or more) of his disposable income on his family.
The jury awarded Linda Ponder $700,000.00 for loss of support, earnings and maintenance. Nickie Ponder was earning $2,125.00 per month at the time of the accident or $25,000.00 a year.
If Linda Ponder were to invest $700,000.00 in a portfolio of U.S. Treasury Bonds such as was suggested by expert economist Dr. Boudreaux, at an average return of 10.25 percent interest, she could immediately have an income of $71,750.00 per year. Nickie Ponder was only earning $25,500.00 a year at the time he was killed. She would receive $71,750.00 in interest every year that her investments averaged a return of 10.25 percent, and when she died, the principal amount of $700,000.00 would still be available to go to her heirs, presumably her children.
With regard to Linda and Nickie's children, plaintiffs' counsel has suggested that the present value of loss of six years support to John Wayne Ponder alone is $128,571.00. If that is divided by the six years until his reaching majority it amounts to *830 $21,000.00 a year, which is more than Nickie Ponder was earning after taxes at the time of his death.
Clearly Nickie could not be expected to have his earnings increase during that six years to such an extent that he would be contributing $21,000 a year to the support of John Wayne. And such a figure does not consider reduction of the annuity to discount it to its present value. The same can be said of the awards to Christopher and Angela Ponder.
Plaintiffs emphasize the fringe benefits accorded decedents prior to their death. However, a spouse and children have not lost any support because the husband/father is no longer alive to get holidays, vacations, sick leave and payment for jury duty. Flight insurance and life insurance were not items of support for the wife and children that they have lost through the death of the worker. Plaintiffs received the amount of life insurance decedents had. Because he is no longer alive, there is no need for the family to pay premiums for flight insurance or life insurance on his life. Likewise, disability insurance, retirement plans, stock ownership plans and room and board which were provided to the decedents while he was working do not constitute items of support for his family that they have lost through his death.
The only item of support that was being provided to the spouse and children through ODECO's fringe benefits were the major medical and hospitalization insurance with which they were provided directly as dependents. All of the other fringe benefits were going directly to the decedent and not as support to his wife and children. Dr. Bettinger's estimate of the worth of fringe benefits was clearly excessive.
We find the jury clearly abused its great discretion in finding that Nickie Ponder would have contributed three times his after-tax earnings to the support of his three children and, additionally, have contributed that same amount to the support of his wife at the same time.
Having found a clear abuse of discretion, we are constrained to reduce the award only to the highest point which is reasonably afforded the finder of fact. Although estimates of economic losses are speculative in nature and incapable of calculation with mathematical certainty, the award for loss of support herein exceeded the projections of all experts. According to counsel for the Linda Ponder plaintiffs, their own expert projected Nickie's earnings loss to the Nickie Ponder family at about $700,000.00 once a reduction is made for the inflated value placed on fringe benefits. Apportioning three-fourths of this sum to the surviving spouse's support, a balance of $175,000.00 remains for support of the three children.
At the time of the death of Nickie Ponder his three children would have reached age eighteen as follows: John Wayne Ponder in approximately six years; Christopher in approximately ten years; and, Angela Ponder in approximately twelve years. These years represent years of dependency of the children and total twenty-eight years. Allocating $175,000.00 to the three Ponder children on a proportional basis of 6/28, 10/28, and 12/28 the proper support awards to the children are:

John Wayne Ponder $37,500.00
Christopher Ponder 62,500.00
Angie Ponder 75,000.00

Cf: Faulk v. Schlumberger Well Service, 412 So.2d 162 (La.App. 3rd Cir.1982). We note that the other elements of damages awarded to the Linda Ponder plaintiffs are not herein disturbed.
With regard to Donald R. Ponder, Jr., he was 11 years old at the time of the trial. He presumably would have been supporting himself in 7 years when he became 18. An award of $200,000.00 could be invested in a safe investment at 10.25 percent, which would give an income on the $200,000.00 in the first year of $20,500.00. Clearly, Donald Ponder was not contributing $20,500.00 a year out of his total earnings of $37,000.00 to the support of Donald, Jr. at the time of his death but his earnings *831 were projected to increase. Thus, we think that an award of $200,000 is somewhat out of proportion for someone age eleven and must be reduced to the highest amount which the jury could reasonably have awarded under the circumstances. We believe the highest amount of award under the circumstances to be $70,000 for loss of support.

DISCLOSURE OF POLICY LIMITS TO THE JURY
Appellant insurers contend that the trial court erred in permitting plaintiffs' attorneys to disclose the amount of the policy limits to the jury. Prior to trial, defendants filed a Motion in Limine to prevent such a disclosure, however, the trial judge denied the motion. We find he erred in doing so. The financial status of a defendant is irrelevant unless he places it at issue by claiming inability to pay. Suhor v. Gusse, 388 So.2d 755 (La.1980); Moffett v. Lumpkin, 382 So.2d 278 (La.App. 4th Cir.1980); Ashley v. Nissan Corp. in U.S.A., 321 So.2d 868 (La.App. 1st Cir. 1975). Compare: the three opinions in Domingue v. Continental Ins. Co., 348 So.2d 209 (La.App. 3rd Cir.1977). However, because the jury's award fell below the policy limits and because of our independent determination that certain of the damage awards constituted a clear abuse of discretion, the erroneous denial of defendants' Motion in Limine does not warrant reversal under the circumstances.
For the reasons assigned, the judgment appealed is hereby amended in accordance with the views expressed hereinabove. In all other respects, the judgment is affirmed at appellants' cost.
AFFIRMED.
DOMENGEAUX, Judge, concurring.
The language in the Louisiana Supreme Court case of Arceneaux v. Domingue, 365 So.2d 1330 (La.1979), indicates the trend in that Court clearly being toward admissibility of the policy limits before the jury, even when the inability of a defendant to pay is not an issue. I therefore feel that the majority opinion may be in error when it states that the trial judge was wrong in allowing plaintiffs' attorneys to disclose the amount of the policy limits to the jury in this case.