412 So.2d 162 (1982)
Diane FAULK, Plaintiff-Appellee,
v.
SCHLUMBERGER WELL SERVICES, et al., Defendants-Appellants.
No. 8625.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
*163 Woodley, Barnett, Cox, Williams & Fenet, E. E. Woodley, Lake Charles, Harold T. Buckley, Jr., New Orleans, for defendants-appellants.
Jones, Jones & Alexander, J. B. Jones, Jr., Cameron, Raleigh Newman, Stockwell & Associates, Robert Dampf, Lake Charles, for plaintiff-appellee.
Before GUIDRY, SWIFT and STOKER, JJ.
STOKER, Judge.
These three consolidated actions arise out of the death of Michael K. Faulk in an intersectional collision. Primary issues are the alleged negligence of the defendant Robert Trosclair and the alleged contributory negligence of the deceased, Michael K. Faulk. Other issues are raised, including as an alternative the complaint of appellants that the quantum of the awards is excessive.
The accident and death took place on December 8, 1979, in Cameron Parish, Louisiana. At the time Michael K. Faulk (Faulk) was married to Diane Faulk who brought this suit on her own behalf and on behalf of her minor son, Michael John Faulk, born of the marriage. Faulk had two daughters by a prior marriage to Sherry Ann Dinger who brought suit on behalf of the two daughters who are minors, Melanie Michelle and Mia Margaret. We render a separate opinion in that suit on this same day.[1] A third suit was brought by State Farm Mutual Automobile Insurance Company and the estate of Faulk for the automobile damages sustained by the Faulk vehicle and the medical expenses incurred. We also render a separate opinion in that suit on this same day.[2]
The defendants are Robert Trosclair (Trosclair), his employer, Schlumberger Offshore Well Services, Inc. (Schlumberger), and their liability insurer, Travelers Indemnity Company.
Aside from the negligence of the two drivers, the appeals bring up issues relating to the refusal of the trial court to grant defendants a change of venue, objections to the jury selection, and the jury's answers to specific interrogatories in which the jury found that the deceased, Faulk, had been negligent but that his negligence played no part in causing the accident.

*164 FACTS
The accident occurred during dark hours at a T-intersection in marsh country at the intersection of Louisiana State Highway 82 and a private road which enters Highway 82 from the South. Traffic approaching the state highway from the south is faced with a stop sign granting the right of way to the state highway. The state highway is a standard two-lane highway which runs generally east and west. The private road is a shell road leading south from Highway 82 to the off-shore dock facilities of Crain Brothers. Defendant Trosclair was employed by Schlumberger and was driving a long wheel base truck which was blue in color at approximately 2:00 o'clock AM on the morning of December 8, 1980. Trosclair drove north on the shell road and made a left turn into Highway 82 to proceed west. Faulk crashed into the right rear of the Schlumberger truck and was apparently killed immediately. Faulk had been traveling west on Highway 82 prior to the crash and was being followed at some distance by James Duhon. Faulk was driving a 1979 Ford pickup truck which belonged to him and he was alone. Therefore, Duhon is the only known witness to the accident. State Farm Mutual Automobile Insurance Company was the insurer of the Faulk pickup truck and is subrogated for all damages to the truck less the deductible portion and for all medical expenses.
Prior to the accident Faulk had been drinking. Defendants produced the testimony of experts who expressed the opinion that Faulk was speeding.
The jury returned a verdict for all the plaintiffs.

ASSIGNMENTS OF ERROR
One brief has been filed in this appeal on behalf of the defendants and is submitted by both counsel for the defendants. No assignment of error is listed challenging the jury's finding that Robert Trosclair was negligent and that his negligence was a cause of the accident.
The listed assignments urge that the trial court erred in the following respects:
1. In not granting defendant's motion for change of venue.
2. In not answering a question from the jury concerning the preponderance of the evidence relative to the alleged contributory negligence of the deceased Michael K. Faulk.
Defendants allege that the jury erred in the following aspects:
1. In finding that the negligence of Michael K. Faulk was not a legal cause of the accident.
2. The jury awards are excessive and beyond the highest range the evidence can justify.

MOTION FOR CHANGE OF VENUE
Prior to trial Schlumberger filed a motion for a change of venue under LSA-C.C.P. art. 122 seeking to have the trial of the case transferred from Cameron Parish. The motion was apparently denied.[3] Various reasons were given to justify the change. Defendant alleged that an indictment for negligent homicide had been sought from the Grand Jury in Cameron Parish and that, although a no true bill was returned, the presentation of the matter to the Grand Jury was given wide media coverage in the Cameron Parish area. Schlumberger also alleged that the deceased was a police jury member in Cameron Parish and his widow, Diane Faulk, had campaigned extensively for election to Faulk's police jury seat which became vacant upon his death. This campaign resulted in further publicity being given to Faulk's death. It was then alleged that, because the population of Cameron Parish was small, most if not all the members of the jury venire had been exposed to publicity relating to the accident which caused Faulk's death and to the candidacy of plaintiff Diane Faulk in seeking to succeed her husband.
*165 During the jury selection process, counsel probed particularly into the relationships of all prospective jurors subjected to voir dire examination which might indicate close friendship with plaintiffs' counsel, the deceased, or any of the plaintiffs. Several were challenged for cause, and the trial court excused all but one of five jurors so challenged by Schlumberger's counsel. Throughout voir dire examination, the trial judge was alert to discover any close relationships or friendships between the prospective jurors and the parties and counsel. Many were excused by the court on its own motion without the necessity of counsel having to challenge the prospective jurors either for cause or peremptorily. The trial court was quite diligent in screening the jury of jurors who might possibly have been unable to be objective and fair.
At the end of the jury selection process counsel for Schlumberger again renewed its motion for a change of venue on the ground that the jury selection had shown that it was impossible to obtain a jury in Cameron Parish which would be fair to non-residents (or little known residents) of Cameron Parish which involved local plaintiffs, particularly those represented by local counsel.
We have carefully read the transcript of the record covering the jury selection including the voir dire examination. We are not convinced that the trial court committed error in denying a change of venue. It may be that the situation in Cameron Parish is unique because of the fact that it is largely marsh land and has a small population. However, it is not the only parish in Louisiana whose population is sparse and where the number of local lawyers is small.
LSA-C.C.P. art. 122 provides that a party may be granted a change of venue "upon proof that he cannot obtain a fair and impartial trial because of the undue influence of an adverse party, prejudice existing in the public mind, or some other sufficient cause". Diligent counsel has made a strong effort in favor of his client's motion for change of venue, but we do not find that the record proves any undue influence in favor of plaintiffs or that defendants were prejudiced or that they did not receive a fair trial. We have previously noted the special situation existing in Cameron Parish. Hocut v. Insurance Company of North America, 254 So.2d 108 (La.App. 3rd Cir. 1971), writ refused, 260 La. 411, 256 So.2d 292 (La.1972). However, we hardly see how the trial court could have been more fair. The situation of which defendant complains is endemic in many parishes throughout this State and is probably inherent in the jury system everywhere.[4]
Defendant Schlumberger has not shown a cause for relief because of the trial court's failure to grant a change of venue.

ADDITIONAL JURY INSTRUCTION AS TO PREPONDERANCE OF EVIDENCE AND LEGAL CAUSE
The trial court furnished written interrogatories to be answered by the jury. The jury answered that Robert Trosclair and Michael K. Faulk were both negligent but answered that only Trosclair's negligence was a legal cause of Michael Faulk's death.[5] *166 Prior to reaching a verdict the jury requested additional instructions in the following words written on a sheet of legal sized ruled paper:
"QUESTION NO. 4
If you find Michael Faulk negligent, was such negligence a legal cause of his death? Answer Yes or No.
ANSWER ______
"Supposing that we deciede (sic) that both parties are negligent, is Question No. 4 the preponderance (sic) of evidence you were talking about?
"(example 49-51%)
"Also, exactly what does legal cause mean?"
Attached to this sheet is the trial court's response which reads as follows:
"You have asked what the legal cause is. This is not an easy question. Causation is a matter of what has in fact occurred. If a persons (sic) act was a substantial factor in bringing about the result it is a legal cause."
Defendant's brief makes little issue as to the trial court's additional instruction. The thrust of the argument is largely that the jury erred in concluding that the negligence of Michael K. Faulk was not a legal cause of the accident. Defendant's position as set forth in their brief is as follows:
"It is respectively submitted that on the basis of the evidence, the jury's findings that the deceased Michael Keith Faulk was negligent, but that such negligence was not a `legal' cause of his death constitutes manifest error.
"On the basis of the evidence adduced, the jury must have concluded that Faulk was at the time of the accident: (1) under the influence of alcohol; (2) driving at an excessive rate of speed; or (3) guilty of both.
"If the jury felt that either of these possibilities existed, there is simply no reasonable basis for finding that Faulk's negligence did not contribute to the accident.
"The physical evidence shows without question that at the time of the impact, the Schlumberger truck was almost straight in the road, that it could not have been going over 15 miles per hour and that even at a high rate of speed, Mr. Faulk should have had time to stop.
"The plaintiffs do not dispute that Faulk had been drinking. No effort was made to show this although the evidence obviously existed in the testimony of persons he saw that night. Rather, the plaintiffs attack the extent of the alcohol content in the blood of the deceased as found by the Southwest Louisiana Crime Lab's tests and the taking of the sample by Dr. LeBlanc.
"The plaintiffs do not seriously dispute the fact that the deceased was travelling at a high rate of speed that night. The only plaintiff witness, the expert, Ray Herd, placed Faulk's speed in range of 50 miles per hour [Transcript p. 1015] which figure takes into account the loss of speed caused by braking [Transcript p. 1046].
"The jury's verdict was motivated by its sympathy for Mr. Faulk's survivors, their friends and neighbors in the community.
"Further, it is very likely, as noted earlier, that the jury decided who it deemed the most negligent, to be Robert Trosclair and in doing so, applied some kind of comparative negligence, `49% to 51%'. [Transcript p. 95]."
Defendants discuss the evidence relating to proof of intoxication and speeding and what Faulk should have seen or done in detail in eleven separate synopses. Defendants then state the following conclusion:

*167 "From the evidence, the jury concluded that, at the least, Michael Keith Faulk was guilty of contributory negligence. While statutory violations (such as driving while intoxicated or speeding) are not in and of themselves definitive of civil liability, they may be used as guide lines in determining standards in assessing negligence and liability. Smolinski v. Taulli, 276 So.2d 286 (La.1973).
"The law is clear that a motorist entering a right-of-way street is not required to wait until no traffic is in sight. He may assume that other vehicles will observe the speed limit. The test is whether he acts reasonably. Camet v. Guillot, 291 So.2d 438 (La.App. 4th Cir. 1974).
"Here Trosclair concluded that he had time to complete his entry without interferring with the oncoming Faulk pickup truck. He would have been correct had Faulk been travelling at a lawful speed.
"There are, of course, numerous cases with facts like this one. It is submitted that a consideration of all the evidence here, particularly the physical evidence, should convince anyone that the jury, while correct in finding Michael Faulk negligent, fell into error when it held that such negligence did not contribute to the accident.
"It is respectively submitted that this court should find manifest error here. Arceneaux v. Dominque, 365 So.2d 1330 (Sup.Ct.1978)."
The arguments of defendants are persuasive but then so are the arguments of the plaintiffs. The evidence of speed and intoxication consists almost exclusively of the testimony of experts. The validity of the blood-alcohol test was put in question.[6] The facts required the triers of fact to resolve the issues of speed and intoxication, inasmuch as either might have been a contributory cause of the accident, on the basis of expert opinion evidence. Moreover, the ultimate question is one of causation. No citation of authority is required for the proposition that the defendant who relies on contributory negligence as a defense bears the burden of proof and thus must produce proof that the negligence of the plaintiff was a contributory cause of the accident.
The state of the evidence made the questions of Michael K. Faulk's intoxication and speed questions of causes in fact. If the deceased's negligence was not a cause in fact, it could not be a legal cause. On this matter we cannot say that the jury's findings were clearly wrong. See Case v. Arrow Trucking Co., 372 So.2d 670 (La.App. 1st Cir. 1979), writ denied, 375 So.2d 944 (1979) and Bennett v. United States Fidelity & Guaranty Company, 373 So.2d 1362 (La.App. 1st Cir. 1979), writ denied, 376 So.2d 1269 (1979).
For the foregoing reasons we affirm the jury's finding of liability in this case.

QUANTUM
The jury made lump sum awards as dictated by the jury verdict sheet furnished to them. Therefore damage awards, which are as follows, were not itemized:

Diane Faulk (widow) $200,000
Michael John Faulk 225,000
Melanie Faulk 225,000
Mia Faulk 225,000
 ________
 $875,000
State Farm Mutual
Automobile Company $ 10,237

Defendants-appellants contend on appeal that these awards are excessive. Plaintiff-appellee, Diane Faulk, answered the appeal and urges that the award to her is inadequate and should be increased by this court to $450,000.
Defendants-appellants contend that the evidence shows that the marriage between the deceased and Diane Faulk was not close, and there were indications that the *168 marriage would not be more successful than the deceased's first marriage. On behalf of Diane Faulk it is argued that the defense unfairly suggested to the jury that she would have divorced her deceased husband and would have remarried. With reference to the children, appellants argue that the sum of $225,000 awarded to each of them evidently reflected loss of future support. The fact that Melanie and Mia were approximately nine and eleven years of age when their father died, the fact that he was paying $225 in child support for their maintenance, the fact that they did not live with him, and the fact that their mother's antipathy toward the father would be likely to affect their feelings toward their father in a negative way are cited by appellants as reasons why the two girls should not be awarded $225,000 each. Appellants urge that, in any event, the award for the two girls should be proportionately lower than the award to the son who was a little over three years old at the time of the death of the father.[7] At the time of his death Faulk was paying a total of $225 per month in child support for both girls. On this basis appellants argue that Mia could have expected approximately $15,000 in support until she reached eighteen years of age and Melanie could have expected approximately $13,500.
Viewing all four awards together, it does appear that the jury abused its discretion and that some adjustment is required. In making appropriate adjustment we must conform to the rules for appellate review of quantum awards set forth in Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976), and Reck v. Stevens, 373 So.2d 498 (La.1979).
In order to establish the special damages in the form of economic loss of support, the plaintiffs produced the expert testimony of Donald W. Cornwell, an Economist who taught at the University of Southwestern Louisiana. He made projections of the loss of income from the date of death until the date of trial and also the future economic loss based on a work-life expectancy. Mr. Cornwell based his projections on an age of 30.3 years for the deceased at the date of his death with a work life expectancy of 32 years. Michael Faulk had been a wage earner in offshore operations primarily but in recent years had engaged in farming operations at a loss. Mr. Cornwell also included in his projections the police jury salary which Faulk would have begun to earn on July 1, 1980, of $600 a month and which Cornwell said would have increased to $800 a month on December 1, 1980. He also included the value of a hospitalization policy he would have had with the police jury in the amount of $1,623.72 per annum.
Although Mr. Cornwell was furnished with income tax information for Faulk for the years 1976, 1977, 1978, and 1979 he used only the figure for 1976. This established an income for the year 1976 of $23,002.25. Mr. Cornwell testified that he used this figure as a base because in years thereafter Faulk became involved in a farming operation and in the early years of farming he was building his business and operating at a loss. Mr. Cornwell stated that Faulk "had demonstrated capacity of having earned this amount". From his projections he deducted a percentage which he referred to as personal maintenance of the deceased, that being the amount Faulk would have spent on himself for food, clothing, shelter, and other basic needs.
Based on the above data, Mr. Cornwell calculated that the economic loss of the widow and three children as of the date of the trial to be $28,619.96.
In calculating future wages, he applied an annual growth rate to wages of 6.65%, an annual growth rate to police jury wages of 6.22%, and an annual growth rate for the value of the police jury insurance of 8.12%. Mr. Cornwell increased the personal maintenance factor to 23.9% because, as the children grew older and became less dependent on him, the amount Faulk would spend on himself would increase proportionately.
*169 After arriving at certain figures, he discounted them in order to render the loss into the present value. He used an 8% discount rate and 9% discount rate. At 8% the present value of the future loss of income and support was $669,738.66. At 9%, it was $585,692.80. To these figures he added the actual loss at the time of trial. Future loss at 8% plus loss to date would yield a total loss of support of $698,358.62, and at 9% it would amount to $614,312.76.
The defense argues that these figures are not realistic for several reasons. The defense points out to begin with that it would be improper to assume that Michael Faulk would have continued to be elected to the police jury throughout his life. Also, they challenge the failure of Mr. Cornwell to take into consideration the lower income for the years following 1976 and his assumption that Michael Faulk had demonstrated a capacity to earn what he earned in 1976, which was $23,002.25.
After hearing the testimony of Mr. Cornwell, the jury might very well have been more conservative than he and may have actually taken into account certain other factors which the defense urges should be taken into account.
Considering the facts of this case and the unitemized jury awards, we make the following comparisons. In total damages exclusive of automobile damages, the jury awarded $875,000. Mr. Cornwell's estimate of loss of economic support was $700,000 in round figures. The jury treated the three children equally. We infer from this that the jury probably considered that each child sustained the same amount for general damages, that is, for loss of love and affection. If we projected general damage awards of $40,000 for each child and $100,000 for Diane Faulk, total general damages would equal $220,000. Taking $220,000 from the total award of $875,000 would leave $655,000 to be allocated to loss of economic support. If the jury had made itemized awards for general damages in accordance with the projection stated above, the jury's total award for loss of economic support would have been closely in line with the $700,000 loss estimated by plaintiffs' economic expert. As we will explain we feel that the jury abused its discretion in making its awards.
Inasmuch as the trier of fact is not bound by the opinions of experts which are to be given such value as the trier of fact deems they should have, future loss of economic support should not stand or fall on the testimony of an economic expert who gives projections of earnings. Giving due weight to the arguments of defendants-appellants, particularly to the fact that Mr. Cornwell used a demonstrated higher capacity for earning as a wage earner as contrasted with the actual earnings of the deceased as a farmer with the addition of a salary as an elected public official, we do not consider a projected economic loss in this case of between approximately $614,000 and $700,000 to be exceptionally wide of the mark. See Coco v. Winston Industries, Inc., supra, headnotes 11 and 12 on page 338. Estimates of such losses are recognized to be speculative in character and incapable of calculation with absolute, mathematical certainty. Robinson v. Graves, 343 So.2d 147 (La.1977) and Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968).
In making what we consider to be appropriate adjustments we will utilize the projections stated above as general damages. We will utilize the figure of $655,000 as total loss of support, past and future, to be appropriately apportioned between the four claimants. The figure of $655,000 is reasonably supported by the testimony of Mr. Cornwell whose high and low estimates were $698,358.62 and $614,312.76 respectively.
General Damages of the Children of the Deceased.
Despite the arguments the daughters of the deceased suffered less loss in love and affection than they would have had their parents remained married and had not become estranged, we are inclined to treat the three children on an equal basis with reference to general damages. We consider that an award of $40,000 to each child would be fair. It is our opinion, however, *170 that the jury abused its discretion measured against the guidelines laid down in Coco v. Winston Industries, Inc., supra, in awarding equal overall amounts to the three children for loss of economic support. This is because the awards do not take into consideration the periods of dependency of the three children which will vary because of their varying ages.
Loss of Support of the Children of the Deceased.
We have concluded that a fair distribution of the sum of $655,000 in loss of support between Diane Faulk and the three children of the deceased will result by awarding one-half to Diane Faulk and awarding one-half to the three children. At the time of the death of their father the children would have reached the age of eighteen, the age of majority, as follows: Mia Faulk in approximately nine years, Melanie Faulk in approximately eleven years and Michael John Faulk in approximately sixteen years. These years represent years of dependency of the children and total 36 years. A fair allocation of $327,500 (½ of $655,000) among the children may be made by fixing the awards on a proportional basis of 9/36, 11/36 and 16/36. Accordingly, we make the following awards to the children for loss of support:

Mia Faulk $ 81,875.00
Melanie Faulk 100,069.44
Michael John Faulk 145,555.56

When these amounts and the amounts awarded the children as general damages are added together, they will represent, in our opinion, the highest amounts the jury could have awarded each child.
General Damages and Loss of Support of Diane Faulk.
As we propose to increase the jury's award to Diane Faulk, the widow of the deceased, we may increase it only to the extent of the lowest amount the jury might have awarded her. We fix her recovery for general damages at $100,000. In plaintiffs' brief it is urged that in order to be consistent with Coco v. Winston Industries, Inc., supra, the minimum award which should be made to her for general damages should be $100,000 and the loss of support should be a minimum of $350,000 for a total of $450,000. We will fix the award for loss of support at one-half of $655,000 so as to award her $327,500 for this item. Therefore, we will amend the jury's award of $200,000 to Diane Faulk to $427,500, the lowest amount which, in our estimation, it could have awarded her.
Recapitulation of Awards.
To sum up and recapitulate the amendment of the jury's award, we set forth the total awards as follows:

Mia Faulk
Loss of love and affection $ 40,000.00
Loss of support 81,875.00 $121,875.00
 ___________
Melanie Faulk
Loss of love and affection $ 40,000.00
Loss of support 100,069.44 $140,069.44
 ___________
Michael John Faulk
Loss of love and affection $ 40,000.00
Loss of support 145,555.56 $185,555.56
 ___________
Diane Faulk
Loss of love and affection $100,000.00
Loss of support 327,500.00 $427,500.00
 ___________ ___________
 $875,000.00

CONCLUSION
For the foregoing reasons the judgment of the district court in this case is affirmed but amended to award Diane Faulk individually the sum of Four Hundred Twenty-seven Thousand Five Hundred and no/100 ($427,500.00) Dollars and to award Diane Faulk, as natural tutrix of the minor Michael John Faulk, for his use and benefit the sum of One Hundred Eighty-Five Thousand Five Hundred Fifty-five and 56/100 ($185,555.56) Dollars. As thus amended, the judgment in this case is affirmed. The costs of this appeal are assessed equally between plaintiff-appellees and defendant-appellants.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] Sherry Ann Dinger, Natural Tutrix of Melanie Michelle Faulk and Mia Margaret Faulk v. Schlumberger Well Services, et al., 412 So.2d 171 (La.App. 3rd Cir. 1982).
[2] State Farm Mutual Automobile Insurance Company and Estate of Michael K. Faulk v. Schlumberger Offshore Well Services, et al., 412 So.2d 171 (La.App. 3rd Cir. 1982).
[3] The record contains no transcript of the court minutes, orders, or reasons for judgment. However, defendant-appellant complains on appeal of the trial court's failure to grant a change of venue and the case was tried in Cameron Parish.
[4] If evils inherent in the jury system permit development in a particular judicial setting of an intolerable condition in which nonresidents (or others whose interests are not identified with the local residents eligible for jury service) cannot obtain a fair trial, relief can only be given in particular litigation if the evil is clearly reflected in the trial records. In the absence of such record evidence, general relief must come from sources or agencies outside of the context of particular litigation.
[5] Questions 1 through 4 of the jury verdict sheet with the answers given reads as follows:

"JURY VERDICT SHEET
"QUESTION NO. 1
"Was Robert Trosclair, as agent or employee of Schlumberger negligent? Answer Yes or No.
ANSWER s/Yes
"If your answer is no, proceed no further.
"QUESTION NO. 2
"If you find Robert Trosclair, as agent or employee of Schlumberger negligent, was such negligence a legal cause of the death of Michael Faulk? Answer Yes or No.
ANSWER s/Yes
"If you answer to both questions No. 1 and 2 were yes, proceed to Question No. 3 and No. 4.
"QUESTION NO. 3
"Was Michael Faulk negligent? Answer Yes or No.
ANSWER s/Yes
"QUESTION NO. 4
"If you find Michael Faulk negligent, was such negligence a legal cause of his death? Answer Yes or No.
ANSWER NO
"If your answer to Question NO. 4 is yes, proceed no further. If your answer to Question NO. 4 is no, proceed to the next questions."
[6] There is no presumption of intoxication in civil cases based on the results of blood-alcohol tests. Expert testimony may show that a person's driving ability and judgment becomes impaired at a given level of blood-alcohol. Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1976). Such testimony necessarily depends upon the integrity of the blood-alcohol testing process.
[7] The respective birthdays of the children are: Mia, August 14, 1970; Melanie, February 22, 1972; and Michael John, October 2, 1977.