491 So.2d 94 (1986)
Richard Michael SAVOIE, Plaintiff-Appellee,
v.
McCALL'S BOAT RENTALS, INC., Defendant-Appellant.
No. 85-582.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
Writ Denied October 3, 1986.
*97 Gelpi, Sullivan, Carroll & LaBorde, Gerart T. Gelpi and Richard O. Kingrea, New Orleans, for defendant-appellant.
Jones, Jones & Alexander, J.B. Jones, Jr., Cameron, for plaintiff-appellee.
Camp, Carmouche, David Frohn, Lake Charles, for intervenor-appellee.
Before STOKER and KING, JJ., and COX, J. Pro Tem.[*]
KING, Judge.
Richard Michael Savoie (hereinafter referred to as the plaintiff) brought suit to recover damages for personal injuries sustained by him on September 28, 1982, while being transported by a personnel basket from the deck of the M/V Doreen McCall to a stationary platform located in West Cameron Block 171 of the Gulf of Mexico.
The plaintiff filed suit in the Thirty-Eighth Judicial District Court in and for Cameron Parish, Louisiana on November 15, 1983, against McCall's Boat Rentals, Inc. (hereinafter referred to as McCall) alleging negligence and unseaworthiness against McCall and the M/V Doreen McCall. Additionally, the plaintiff sought an award of punitive damages based on McCall's allegedly arbitrary and capricious fault. Subsequently, on June 19, 1984, the plaintiff filed a First Supplemental and Amending Petition adding as a defendant, McCall's insurer, American Home Assurance Company (hereinafter referred to as the defendant). A Second Supplemental and Amending Petition was filed by plaintiff on July 12,1984, adding as a defendant N.F. McCall Crews, Inc., who furnished the crew of the M/V Doreen McCall. National Union Fire of Pittsburgh, Pennsylvania, filed a Petition of Intervention on May 18, 1984, and subsequently supplemented and amended its petition seeking reimbursement for worker's compensation and medical expenses paid by it to plaintiff.
McCall answered plaintiff's petition and excepted, based upon prescription, and moved to strike the unseaworthiness claim after the initial suit was filed. After a hearing the motion to strike was granted and the exception was overruled. McCall timely answered all further supplemental petitions of the plaintiff and the intervenor.
This matter came to trial before a jury on January 14, 1985. During the course of the trial, the plaintiff dismissed his claims against McCall and M.F. McCall Crews, Inc. and his claim for punitive damages. *98 Following trial by jury, judgment was entered pursuant to the jury verdict on February 21,1985, in favor of the plaintiff and against the defendant, American Home Assurance Company, for $650,000.00 together with legal interest from date of judicial demand, until paid. Judgment was rendered in favor of National Union on its intervention for $56,108.98 together with legal interest, to be paid from plaintiff's award. The defendant appeals and alleges the following assignments of error:
(1) The defendant was denied a fair and impartial trial when the trial court failed to grant its motion for a change of venue;
(2) The trial court erred in denying the defendant's challenges of potential jurors for cause, forcing the defendant to exhaust its peremptory challenges prematurely;
(3) The trial court erred in denying the defendant's motion to strike the plaintiff's jury demand because the substantive general maritime law governing plaintiff's claim does not entitle him to a jury trial;
(4) The jury's verdict was manifestly erroneous;
(5) The trial court erred in refusing to allow the defendant to cross-examine the plaintiff concerning compensation payments he had received;
(6) The trial court erred in failing to allow the defendant to rebut the plaintiff's counsel's statement that a verdict against the defendant would not financially affect its insured(s);
(7) The trial court's failure to submit an interrogatory to the jury, which would have enabled it to determine Mobil Oil Exploration & Producing Southeast, Inc.'s fault, was reversible error;
(8) The trial court erred in instructing the jury that the Pennsylvania Rule applied to the facts of the case; and
(9) The jury's award of pre-judgment interest was clearly erroneous.

FACTS
On September 28, 1982, plaintiff, an electrical technician employed by Mobil Pipeline Company and a passenger aboard the M/V Doreen McCall, a 110 foot crewboat owned by McCall, was being transported to a platform owned by Mobil Oil Exploration & Producing Southeast, Inc. (hereinafter referred to as MOEPSI) in West Cameron Block 171 in the Gulf of Mexico off Louisiana's coast.
The plaintiff and other personnel departed MOEPSI's Grand Chenier dock in Cameron Parish, Louisiana at approximately 7:00 A.M. for the one to one and a half hour trip to the platform known as West Cameron 171. Although the M/V Doreen McCall normally operated with a crew of three, the crew for this trip was composed of Captain Hunott and one deckhand, Wiley Thomas.
Upon arrival at the platform, Captain Hunott positioned the vessel for James Hebert, MOEPSI's platform crane operator, to offload men and materials using the platform's crane and attached basket. There was nothing unusual about the weather or sea conditions at this time. This crane was used to lower the personnel basket to an open spot on the stern deck of the vessel, approximately 20 to 25 feet to the rear of the vessel from the aft door of the living quarters. The remainder of the stern deck was covered with the equipment of MOEPSI and/or its contractors, which had been loaded by MOEPSI hands. The unloading process ultimately required several lifts of the basket to remove all the passengers and equipment from the vessel. The plaintiff, along with fellow passengers Noel Geneste, Marvin Woodard, and Ralph Swire, were to be offloaded first. Geneste, facing aft, and Woodard, facing forward, had already gotten onto the personnel basket and the plaintiff had begun to board the basket, when the basket was suddenly jerked into the air. After dangling, supported by his arms approximately 20 feet in the air, plaintiff was able to climb into the basket and was brought onto the platform.
*99 The plaintiff and Marvin Woodard both testified the crane was raised upon signal given by the vessel's deckhand. Hebert, the crane operator, indicated that he raised the personnel basket on the signal of either the vessel's deckhand or engineer. Captain Hunott testified it was the deckhand's responsibility to give the signal to raise the basket to the crane operator.
As a result of this accident, plaintiff sustained an arm injury. After the accident, plaintiff was transported back to land by helicopter in order to be examined and treated by a physician. Plaintiff testified that as a result of this accident, he suffered an immediate injury to his right arm and that as time progressed he began experiencing pain and problems in his neck, back and legs. Plaintiff has not been able to return to his regular job since the accident.

CHANGE OF VENUE
The defendant first claims that it was denied a fair and impartial trial when the trial judge failed to grant its motion for a change of venue. The defendant argues that because the plaintiff was the son of the Sheriff of Cameron Parish, Louisiana, it was impossible for it to obtain a fair and impartial trial before a Cameron Parish jury. The defendant also argues that the trial court's refusal to grant its motion for a change of venue constitutes reversible error because the jury venire was composed of several former clients of the plaintiff's attorney as well as a spouse of a parish employee.
La.C.C.P. Art. 122 provides that:
"Any party by contradictory motion may obtain a change of venue upon proof that he cannot obtain a fair and impartial trial because of the undue influence of an adverse party, prejudice existing in the public mind, or some other sufficient cause. If the motion is granted, the action shall be transferred to a parish wherein no party is domiciled."
However, a change of venue is discretionary with a trial judge and will not be disturbed absent a clear abuse of discretion. Deville v. Leonards, 457 So.2d 311 (La. App. 3rd Cir.1984).
This court has previously noted the special situation which exists in Cameron Parish. The case of Faulk v. Schlumberger Well Services, 412 So.2d 162 (La.App. 3rd Cir.1982), in which a similar argument was made to that now being made in this suit, arose out of the death of a prominent Cameron Parish citizen and police juror in an intersectional collision. His widow, who then campaigned to fill the vacant seat on the parish police jury, sued the defendants in tort. The attorney for the plaintiff-widow was the same attorney involved in the instant suit and the same trial judge presided in that case. The defendants in Faulk sought a change of venue alleging that it was impossible for them to receive a fair and impartial trial by jury due to the widespread publicity of the case in the local area.
This court, in affirming the trial judge's denial of the defendant's motion for a change of venue, noted that:
"[d]uring the jury selection process, counsel probed particularly into the relationships of all prospective jurors subjected to voir dire examination which might indicate close friendship with plaintiff's counsel, the deceased, or any of the plaintiffs. Several were challenged for cause, and the trial court excused all but one of five jurors so challenged by Schlumberger's counsel. Throughout voir dire examination, the trial judge was alert to discover any close relationships or friendships between the prospective jurors and the parties and counsel. Many were excused by the court on its own motion without the necessity of counsel having to challenge the prospective jurors either for cause or peremptorily. The trial court was quite diligent in screening the jury of jurors who might possibly have been unable to be objective and fair." Faulk v. Schlumberger Well Services, 412 So.2d 162, at page 165 (La.App. 3rd Cir.1982).
We also stated that:
"[w]e have carefully read the transcript of the record covering the jury selection *100 including the voir dire examination. We are not convinced that the trial court committed error in denying a change of venue. It may be that the situation in Cameron Parish is unique because of the fact that it is largely marsh land and has a small population. However, it is not the only parish in Louisiana whose population is sparse and where the number of local lawyers is small.
* * * * * *
[Defendant's] counsel has made a strong effort in favor of his client's motion for change of venue, but we do not find that the record proves any undue influence in favor of plaintiffs or that defendants were prejudiced or that they did not receive a fair trial. We have previously noted the special situation existing in Cameron Parish. Hocut v. Insurance Company of North America, 254 So.2d 108 (La.App. 3rd Cir.1971), writ refused, 260 La. 411, 256 So.2d 292 (La.1972). However, we hardly see how the trial court could have been more fair. The situation of which defendant complains is endemic in many parishes throughout this State and is probably inherent in the jury system everywhere." Faulk v. Schlumberger Well Services, 412 So.2d 162, at page 165 (La.App. 3rd Cir.1982).
And in a footnote to the Faulk opinion, we stated:
"If evils inherent in the jury system permit development in a particular judicial setting of an intolerable condition in which nonresidents (or others whose interests are not identified with the local residents eligible for jury service) cannot obtain a fair trial, relief can only be given in particular litigation if the evil is clearly reflected in the trial records. In the absence of such record evidence, general relief must come from sources or agencies outside of the context of particular litigation." Faulk v. Schlumberger Well Services, 412 So.2d 162, at page 165 (La.App. 3rd Cir.1982).
As in Faulk, we have carefully reviewed the record and are not persuaded that the trial judge in the instant case erred in denying the motion for a change of venue.
Though the defendant maintains that an "intolerable condition" existed because the plaintiff was the son of the Sheriff, it failed to show any undue influence in favor of the plaintiff by which it was unduly prejudiced or denied a fair and impartial trial. In fact, in its brief, the defendant admits that it "does not imply that Sheriff Savoie committed any improper act to exercise an undue influence over the jurors." During the voir dire examination, the trial judge probed into the relationships between prospective jurors, parties and counsel. The trial judge even excused some potential jurors on its own motion, including persons who worked with the Sheriff. It is evident that the trial judge was cognizant of the potential for undue influence and prejudice and took adequate precautions to insure that the jury was composed of impartial jurors.
The defendant has also made no showing that there was any undue influence or prejudice that operated to his detriment simply because the jury venire was composed of two former clients of the plaintiff's counsel. In the case of Viator v. Gilbert, 206 So.2d 106 (La.App. 4th Cir. 1968), modified on other grounds, 253 La. 81, 216 So.2d 821 (1968), it was held that defendants were not entitled to a mistrial simply because three jurors, though challenged for cause, were impaneled despite the fact that they were acquainted with one of plaintiff's attorneys. In so ruling, the Fourth Circuit stated that:
"The trial judge evidently did not believe that the relationship was such that it would have influenced the jurors in coming to a verdict, and there has been no showing that this would have been the case ..." Viator v. Gilbert, 206 So.2d 106, 108 (La.App. 4th Cir.1968), modified on other grounds, 216 So.2d 821 (1968).
In the instant case, the trial judge specifically inquired as to whether or not those two potential jurors would be unduly influenced by their past relationships with the plaintiff's counsel. Satisfied with their responses *101 that they would not be, the trial judge chose not to excuse them for cause. We find that the record supports the trial judge's decision.
In Hocut v. Insurance Company of North America, 254 So.2d 108 (La.App. 3rd Cir.1971), writ den., 260 La. 411, 256 So.2d 292 (1972), this court addressed the same question:[1]
"[D]efendant complains that seven of the twelve jurors were either clients of plaintiff's attorney or had close relatives who were such. This, defendant says, gave a considerable advantage to plaintiff and it demands that we scrutinize this case with great care, if not that we reverse. We have scrutinized this case with great care as we do all cases that come before this court, and we do not find in this allegation of error a basis for reversal.
While the allegation concerning the seven jurors are true, and we can take judicial cognizance of the fact that the demographic composition of Cameron Parish makes such a jury not only possible, but likely, there has been no showing of any prejudice or partiality on the part of these men. Their presence on the jury, at worst, created what could well be a double edged sword...." Hocut v. Insurance Company of North America, 254 So.2d 108, at pages 113-114 (La.App. 3rd Cir.1971), writ den., 260 La. 411, 256 So.2d 292 (1972).
The defendant has made no showing in this suit that any undue influence or prejudice arose simply because the spouse of a parish employee was permitted to remain on the jury.
Our review of the record reveals that the trial judge was extremely diligent in the screening of potential jurors who might have possibly been unable to be objective and fair. Faulk v. Schlumberger Well Services, supra. We therefore find that the trial judge did not abuse his discretion in denying defendant's motion for a change of venue.

CHALLENGE OF JURORS
The defendant's second assignment of error is that the trial judge erred in denying the defendant's challenges of potential jurors for cause. The defendant maintains that it was reversible error for the trial judge to refuse to sustain its challenges for cause of a police juror, a husband and wife, and two of the former clients of plaintiff's attorney, forcing defendant to prematurely use five of its peremptory challenges.
La.C.C.P. Art. 1765 provides that:
"A juror may be challenged for cause based upon any of the following:
* * * * * *
(3) When the relations whether by blood, marriage, employment, friendship, or enmity between the juror and any party or his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict;
The improper denial of a challenge for cause which requires a party to exhaust his peremptory challenges prematurely is reversible error. DeSalvo v. Rizza, 272 So.2d 27 (La.App. 4th Cir.1972), writ den., 275 So.2d 781 (La.1973). However, in this case we find that the record reveals that no such improper denials of challenges for cause occurred.
The defendant maintains that it must be presumed that the police juror would be unduly influenced because this case was brought by another parish official's son, and because the plaintiff's counsel is the brother and law partner of the Cameron Parish District Attorney, who is by law the legal counsel to the police jury. However, the defendant has not made any showing of prejudice or undue influence. It should be noted that Mr. McCall, owner of the corporation which the defendant insured and who sat at the defense table in the courtroom, was also a prominent Cameron *102 Parish citizen and a former police juror himself. If we were to presume any prejudice or undue influence because of a police juror being on the jury, it is just as possible to presume that it would be in favor of defendant. It is also important to note that the plaintiff, as well as defendant, jointly exercised a peremptory challenge in order to remove this police juror. We can find no evidence of undue influence or prejudice in this regard.
The defendant also maintains that a husband and wife should never be allowed to sit on the same jury; however, it cites no authority for this contention. The record reflects that the trial judge inquired as to whether the husband and wife could exercise independent judgment and found that they in fact could. The plaintiff even agreed to give up a peremptory challenge in order to excuse the wife if the defendant chose to excuse the husband. This was in fact done. We do not find that there was an improper denial of a peremptory challenge in this regard either.
Finally, the defendant maintains that it was improper for the trial judge to deny its challenges for cause of the two potential jurors who were former clients of the plaintiff's counsel. However, as we have previously discussed in addressing the defendant's first assignment of error, the trial judge examined both thoroughly and determined that they could both be fair and impartial. We also take note of the fact that the trial judge excused several other prospective jurors who were former clients of plaintiff's counsel because he determined that they might not be able to be fair and impartial. We do not find that the trial judge erred in overruling defendant's challenges for cause of these jurors and the defendant's complaint in this regard is without merit.
It is clear that the trial judge exercised great caution and diligence in interviewing prospective jurors. We accordingly find that there was no improper denial of a challenge for cause which would constitute reversible error.

JURY TRIAL
In its third assignment of error, the defendant alleges that the trial court erred in denying the defendant's motion to strike the plaintiff's jury demand because the substantive general maritime law governing the plaintiff's claim does not entitle him to a jury trial.
In the advancement of its contention, the defendant suggests that we ignore the decision of the Louisiana Supreme Court in the case of Lavergne v. Western Co. of North America, Inc., 371 So.2d 807 (La. 1979), which involved the identical issue. The Louisiana Supreme Court, in Lavergne, held that a plaintiff was entitled to a trial by jury of a maritime claim in a state court, reasoning that a jury trial is a remedy to which a suitor is otherwise entitled pursuant to the "savings to suitors" clause of 28 U.S.C. § 1333.
In reaching a unanimous verdict in Lavergne, the Louisiana Supreme Court stated that:
"It has long been established that a state court, having concurrent jurisdiction with the federal courts as to in personam admiralty claims, is free to adopt such remedies and attach to them such incidents as it sees fit so long as it does not attempt to modify or displace essential features of the substantive maritime law. See Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582 (1924). In Fitzgerald v. United States Lines Co., 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963), the Supreme Court noted:
`While this Court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment, nor any other provision of the Constitution forbids them. Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases. (footnotes omitted)'
Affording a litigant a right to trial by jury in our state courts does not, therefore, modify or displace essential features *103 of the substantive maritime law. Hebert v. Diamond M. Company, supra [367 So.2d 1210 (La.App. 1 Cir.1978)]; Lister v. Texaco, Inc., 361 So.2d 290 (La. App. 1st Cir.), writ denied, 362 So.2d 794 (La.1978). As stated by Judge (now Justice) Blanche in Hebert v. Diamond M. Company, supra, `[a] jury trial is simply a method of enforcing substantive rights. As such, it is purely remedial....'
In sum, we conclude that a right to a trial by jury is one of the remedies to which a suitor is otherwise entitled pursuant to 28 U.S.C. § 1333 when an in personam suit based upon the general maritime law is brought in our state court." Lavergne v. Western Co. of North America, Inc., 371 So.2d 807, at page 810 (La.1979).
In light of Lavergne, we find no error on the part of the trial court in denying the defendant's motion to strike the plaintiff's jury demand.

STANDARD OF REVIEW OF JURY'S FACTUAL FINDINGS
In its fourth assignment of error, the defendant suggests to this Court that the jury's verdict was manifestly erroneous and the scope of our review should include review of facts as well as review of law to make this determination. This contention is totally without merit.
As we have previously stated it is well settled that in maritime cases brought in Louisiana courts that:
"[a]lthough this court is constitutionally authorized to review both the law and the facts in civil cases, under Federal Law and jurisprudence, which we must apply in cases applying Federal Statutes and federal maritime law, the jury's finding of facts cannot be disturbed by an appellate court unless there is no reasonable evidentiary basis for the jury's conclusions." Ellender v. Texaco, Inc., 425 So.2d 291, at page 294 (La.App. 3rd Cir. 1982).
See also Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63 (1971).
By this assignment of error, the defendant maintains that the jury verdict should be reversed because, as it alleges, there was no evidence to support a finding that there was negligence on the part of the crew of the McCall vessel which caused the plaintiff's injury, nor sufficient evidence to show that plaintiff suffered serious injury. With this contention we strongly disagree.
The standard of review, as we have already noted, is governed by federal law and jurisprudence. The jury's findings of fact cannot be disturbed by an appellate court unless there is no reasonable evidentiary basis for the jury's conclusion. Review of the record in this case reveals abundant evidence to support the jury's conclusion that negligence on the part of the crew of the M/V Doreen McCall caused plaintiff's injuries.
The evidence clearly shows that the personnel basket, as plaintiff was boarding it, jerked violently upward, before plaintiff had adequate time to properly position himself, leaving him hanging by one arm twenty feet above the vessel. The men, Woodard and Geneste, who were on the personnel basket at that moment, testified to this. The plaintiff also testified that another man, Halstead, was preparing to board the basket, when the basket was jerked up prematurely and he was knocked back. The safety expert, Robert Owens, who was called to testify at trial, stated that the plaintiff did not violate proper safety methods in boarding the basket.
The plaintiff and Woodard testified that it was a deckhand on the M/V Doreen McCall who gave a premature signal to the crane operator on the platform to lift the basket. The crane operator in particular corroborated this. It was also well established in the record that it was the duty of the deckhand on the vessel to give a hand signal to the crane operator, whose view is very limited, to lift the basket when everyone was set and ready. Even the captain of the M/V Doreen McCall testified that it was part of the deckhand's job to help the workers get on the basket and give that signal. The safety expert also testified *104 that the crew of the vessel violated proper safety procedures.
Only the deckhand himself refuted that this was his duty and that he gave the signal on that particular day. However, even the cold record clearly reflects that this witness lacks credibility, as he also stated that he remembered absolutely nothing about the day in question. In addition, the evidence was sufficient to support a reasonable conclusion by the jury that the M/V Doreen McCall was in violation of a Coast Guard regulation requiring three crew members to be aboard the vessel and that this constituted negligence causing or contributing to the accident and plaintiff's injury.
The defendant also contends that the accident was caused by a problem with the crane belonging to MOEPSI, which was sixteen or seventeen years old at the time. However, there was no evidence to support the defendant's contention.
The defendant also contends that the medical evidence does not support a finding that the plaintiff's injury was serious, although Dr. Oates testified that the plaintiff's injury was very serious and debilitating. The defendant maintains that Dr. Oates lacked credibility because, as defendant characterized Dr. Oates in the appellate brief, he is the "hired gun from Texas, [who] testified at length, but from virtually no notes, that plaintiff was totally disabled."
We have carefully reviewed the testimony of Dr. Oates, who appears to be a very articulate and knowledgeable expert medical witness. That he testified from "virtually no notes" cannot be determined from the record and would only reveal that he had carefully and thoroughly reviewed his case notes prior to testifying and/or had the ability of total recall. This court will not penalize such preparation or ability. There is an abundant evidentiary basis for the jury to believe and accept the testimony of Dr. Oates that the plaintiff's injury is serious, substantial, and continuing.
We accordingly find that the jury's findings of fact are supported by a reasonably evidentiary basis. This assignment of error is without merit.

COLLATERAL SOURCES AND FUTURE INSURANCE COSTS
In its fifth and sixth assignments of error the defendant maintains that the trial judge erred in denying the defendant the right to present testimony concerning the plaintiff's compensation payments and the effect of an adverse verdict on McCall's (the insured) insurance costs.
The defendant maintains that under La. C.C.P. Art. 1634, it had the right to cross-examine the plaintiff regarding compensation payments that he received from his employer because the plaintiff had been examined in chief on this subject matter. We, however, do not find that the plaintiff was examined in chief on the subject, though plaintiff did testify about his dwindling earnings, his financial hardships, and mentioned his receipt of compensation, or that this was a proper subject of cross-examination.
We have previously stated that:
"The Louisiana jurisprudence is clear that a person who misses work and is paid sick leave benefits or annual leave benefits is entitled nevertheless to recover the loss of wages from the tort feasor, or, stated differently, a tort feasor is not entitled to credit for payments made as sick leave benefits or annual leave benefits. McMullen v. Millers Mutual Fire Ins. Co. of Texas, 246 So.2d 702 (La.App. 2 Cir.1971); Dunlap v. Armendariz, 265 So.2d 352 (La.App. 4 Cir.1972). The theory of law is that the wrongdoer is not entitled to benefit by payments made to the injured party from a collateral source to which the wrongdoer has not contributed. Thomas v. Paper Haulers, Inc., 165 So.2d 61 (La.App. 2 Cir.1964)." Taft v. Gist, 293 So.2d 641, at page 644 (La. App. 3rd Cir.1974).
To allow the defendant to cross-examine the plaintiff regarding compensation received from sources other than from the *105 tortfeasor, and which plaintiff used for his living expenses, would be to allow the defendant to skirt the collateral source rule. Accordingly, we find no error on the part of the trial judge in denying the defendant the opportunity to explore the topic of compensation payments received by plaintiff from a collateral source.
The defendant also maintains that it should have been allowed to offer evidence regarding the effect of an adverse judgment on McCall's insurance costs since plaintiff's attorney commented to the jury in closing argument that a verdict in favor of plaintiff would cost McCall nothing. However, the future cost of insurance that may or may not result from an adverse judgment is totally irrelevant and immaterial to the question of an insurance company's liability to a tort victim. We find no error on the part of the trial judge in refusing to allow the defendant to present evidence regarding McCall's future cost of insurance.

FAULT OF THIRD PARTY
The defendant, in its seventh assignment of error, claims that the trial judge's failure to submit an interrogatory to the jury which would have enabled the jury to determine MOEPSI's fault constitutes reversible error.
La.C.C.P. Art. 1812(C) provides in relevant part:
"C. In cases to recover damages for injury, death, or loss, the court may submit to the jury special written questions inquiring as to:
* * * * * *
(2) If appropriate, whether another person, whether party or not, other than the person suffering injury, death, or loss, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage."
We find that the trial judge committed error in not submitting a special interrogatory to the jury to determine the fault, if any, of a third party.
"While La.C.C.P. art. 1812 C provides that the court may (unless waived by all parties) submit special written questions to the jury, the apparent intent is that the court in such circumstances is required to submit the questions. See 1983 Revision Comments, Section (b). [footnote omitted]." Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308, at page 1309 (La.1984).
However, we find in this instance that the trial judge's failure to submit the requested interrogatory was harmless error. We have carefully reviewed the record and have found little evidence to indicate that MOEPSI or any of its employees committed any act of negligence which contributed to the accident and the plaintiff's injury. On the other hand, the record reflects overwhelmingly that the crew of the M/V Doreen McCall was negligent and that their negligence was at the least partially responsible for the accident and the plaintiff's injury. Under the codal authority governing the liability of tortfeasors, the defendant, as liability insurer of McCall, would still be solidarily liable to the plaintiff for the entire amount of damages, even if there was a co-tortfeasor. See La.C.C. Art. 2324. Hence, we find that it was harmless error in this instance for the trial judge to refuse to submit an interrogatory to the jury on the question of MOEPSI's fault.

APPLICATION OF THE PENNSYLVANIA RULE
In its eighth assignment of error, the defendant avers that the trial judge erred in instructing the jury that the "Pennsylvania Rule" applied to the facts of this case.
In instructing the jury, the trial judge stated the following:
"The violation of a United States Coast Guard regulation has another important legal effect. If you find that McCall's Boat Rentals, Inc., was in violation of regulations of the United States Coast *106 Guard, this amounts to what is called statutory fault.
McCall's Boat Rentals, Inc., is then required to show that this violation could not have been one of the causes of plaintiff's injury. A showing by the defendant that the violation might not have caused the injury, or even a showing that the violation probably did not cause the injury will not be enough. The defendant must show that the violation could not have been one of the causes of plaintiff's injury."
This jury charge instructed the jury to apply the Pennsylvania Rule, an admiralty rule originally developed in a collision case, The Pennsylvania v. Troop, 86 U.S. (19 Wall) 125, 22 L.Ed. 148 (1874). The United States Supreme Court held that:
"when ... a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." The Pennsylvania v. Troop, 86 U.S. (19 Wall) 125, 22 L.Ed. 148, at page 151 (1874).
The defendant maintains that the Pennsylvania Rule, also known as "statutory fault," should not be applied in the setting of a general maritime personal injury claim. We disagree with the defendant.
The United States Fifth Circuit Court of Appeal has clearly stated that:
"[i]n collisions involving violations of statutes or regulations, the reversal of the burden of proving causation is well-established under the rule of The Pennsylvania. [footnote omitted] See Skidmore v. Grueninger, 5 Cir., 1975, 506 F.2d 716, 721 n. 1, 1976 AMC 1103, 1110 n. 1; Puerto Rico v. The S.S. Zoe Colocotroni, D.Puerto Rico, 1978, 456 F.Supp. 1327, 1335, 1979 AMC 21, 29-30. The Second Circuit, dealing with an action for limitation of liability rather than the rescue doctrine as such, has applied the Pennsylvania rule to a man-overboard situation. There, violations of statutes governing the stowage of a life raft and the loading of a barge occurred, but there was no evidence that these violations contributed to the deaths of two seamen aboard the barge. The Court nevertheless found in favor of the seamen, by means of a shift in the burden of proof:
`Seaboard argues, however, that there was no evidence that any of the barge's defects or Seaboard's negligent acts probably caused the deaths, and that therefore there is a failure of proof. We need go no further here than to say, however, that given the statutory violations alone (the liferaft stowage and the overloading), Seaboard is not entitled to exoneration. The Pennsylvania, 86 U.S. (19 Wall) 125, 136, 22 L.Ed. 148 (1873), makes it clear that the burden is on a ship in violation of a safety statute-in this case the barge-to show "not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." Seaboard is wrong in its contention that admiralty applies this rule only in collision cases. Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958) (fire on a tug caused by open-flame kerosene lamp carried on scow in statutory violation); The Denali, 112 F.2d 952 (9th Cir.1940) (stranding case).'

In re Seaboard Shipping Corp., 2 Cir., 1971, 449 F.2d 132, 136, 1971 AMC 2145, 2152, cert. denied, 1972, 406 U.S. 949, 92 S.Ct. 2038-39, 32 L.Ed.2d 337." Reyes v. Vantage S.S. Co., Inc., 609 F.2d 140, at page 145 (5th Cir.1980).
We accordingly follow the rationale of Reyes and find that the Pennsylvania Rule is indeed applicable to the instant case, though it is not a "collision" case. Coast Guard regulations require that a vessel such as the M/V Doreen McCall, when operating between twelve and twenty-four *107 hours per day, have three crewmen aboard. It is seemingly an obvious intent of the regulation that there be a sufficient number of crewmen on board so that the duties and tasks performed on the vessel can be carried out with a prescribed degree of safety. One of the main functions of vessels like the M/V Doreen McCall is to transport offshore oil workers to and from their jobs safely. This includes assisting passengers in getting on and off of the vessel to a platform via the personnel basket. An inadequacy in the number of crew members would have a direct effect on the crew's performance of these duties and the safety of passengers. We find that a violation of this Coast Guard regulation is sufficient to warrant invocation of the Pennsylvania Rule to shift the burden to the defendant to show that violation of that regulation could not have been one of the causes of plaintiff's injury.
Whether there was in fact a violation of that regulation is a question for the trier of fact, as is the question of whether the defendant proved that the violation could not have been one of the causes of plaintiff's injury.
This assignment of error is without merit, but we note that even if the Pennsylvania Rule was inapplicable to the instant case, the trial judge's allowing its use would constitute harmless error in light of the substantial evidence contained in the record which supports the jury's finding that the crew of the M/V Doreen McCall was negligent and that this negligence caused plaintiff's injury.

PRE-JUDGMENT INTEREST
In its final assignment of error, the defendant alleges that the jury erred in awarding pre-judgment interest. This assignment of error has merit.
Pre-judgment interest is not allowed on awards under general maritime law for loss of future earnings and future pain and suffering. Petition of City of New York, 332 F.2d 1006 (2nd Cir.1964), cert den., 379 U.S. 922, 85 S.Ct. 277, 13 L.Ed.2d 335 (1964); Hamilton v. Canal Barge Company, Inc., 395 F.Supp. 978 (E.D.La.1975).
In the instant case, the jury instructions did not include any mention of the fact that pre-judgment interest was inapplicable to awards of damages for loss of future earnings or future pain and suffering. Additionally, the form of the verdict supplied to the jury did not provide for an itemization of the different elements of damages, but rather provided only for a general lump sum award. The defendant timely and validly objected to the trial judge's instructions to the jury concerning pre-judgment interest and to the verdict form. We have previously held that the question of pre-judgment interest must go to the jury and be based on the particular circumstances of each case. Ellender v. Texaco, supra; Morris v. Schlumberger, Ltd., 436 So.2d 1178 (La.App. 3rd Cir.1983), writ den., 441 So.2d 1221 (La.1983). The jury returned a verdict awarding the plaintiff a lump sum of $650,000.00 in damages, with legal interest thereon from date of judicial demand, until paid.
The jury's award of pre-judgment interest on the entire award was clearly erroneous. Morris v. Schlumberger, Ltd., supra. Having no means of quantifying the amounts awarded by the jury for each element of damages in order to reverse only the jury's award of pre-judgment interest on future damages, we must reverse the jury's award of pre-judgment interest on the entire amount of the judgment.
An award of interest from date of judgment is an appropriate and acceptable remedy. Remand of this matter on the issue of pre-judgment interest would place undue burden on both parties and upon the court. Therefore, in the interest of judicial economy, we recast the judgment to order that interest on the $650,000.00 lump sum award begin to accrue from the date of judgment, until paid.
For the foregoing reasons, the judgment of the trial court is affirmed in favor of plaintiff and against defendant in the sum *108 of $650,000.00; reversed to set aside the trial court award of pre-judgment interest on the entire jury award; and the judgment is recast to order that the plaintiff be awarded interest on the jury award only from the date of judgment, until paid. All costs of this appeal are taxed to the plaintiff and the defendant.
AFFIRMED IN PART, REVERSED IN PART, RECAST IN PART, AND RENDERED.
NOTES
[*] Judge Ronald D. Cox of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.
[1] It should be noted that the defendant in Hocut did not challenge any of the jurors for cause; nor did he request a change of venue.